Esther STENSETH, executrix of the estate of Marvin Stenseth, deceased, Plaintiff-Appellant,

v.

GREATER FORT WORTH AND TARRANT COUNTY COMMUNITY ACTION AGENCY, et al., Defendants-Appellees.

No. 81–1491
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

April 22, 1982.

---

Janette R. Hinrichs, Don Gladden, Fort Worth, Tex., for plaintiff-appellant.

Brown Herman Scott Dean & Miles, David Broiles, Fort Worth, Tex., for Greater Fort Worth and Tarrant County Community Action Agency.

Cantey, Hanger, Gooch, Munn & Collins, Donald K. Buckman, Fort Worth, Tex., for Greenwood.

Staples & Foster, George A. Staples, Jr., Hurst, Tex., for City of Hurst, et al.

Richard Henderson, City of Fort Worth, Fort Worth, Tex., for City of Fort Worth, et al.

Robert E. Diaz, City of Arlington, Tom Todd, City Atty., Arlington, Tex., for City of Arlington.

Henry E. Kerry, Fort Worth, Tex., for City of White Settlement, et al.

Before BROWN, POLITZ and WILLIAMS, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

This case involves a dispute concerning appellant's deceased husband, Marvin Stenseth, and the circumstances under which his employment ended as a counselor and administrator of programs dispensing Comprehensive Employment and Training Act, 29 U.S.C. § 801 et seq., funds as an employee of the Greater Fort Worth and Tarrant County Community Action Agency (CAA). This suit originally involved thirty-five defendants including the United States Secretary of Labor, municipal governments of Fort Worth, Arlington, Bedford, Haltom City, Hurst, and White Settlement, the Mayor of each of those Cities, the City Manager of each of those Cities, the Greater Fort Worth Manpower Consortium, CAA, eleven of the forty-one members of the Board of Directors of the CAA, the CAA Executive Director, and two employees of the City of Fort Worth.

At the trial, a number of the parties were dropped. The parties remaining consisted of CAA, its Executive Director, Eddie Herrera, Dorothy Scott, who chaired the committee meeting which instituted the dispute here involved, Ollie Reed, Chairman of the Board of CAA, and Tolbert Greenwood, a Fort Worth attorney who was Vice-Chairman of the Board of CAA who served as chairman of the executive committee meeting which played a major role in this case in considering the appeal of Mr. Stenseth. Also involved was the Greater Fort Worth Manpower Consortium which was a contractual arrangement entered into by the cities named above. Its role constituted an arrangement through which the cities applied to the Labor Department for Comprehensive Employment and Training Act funds.

*The Facts*

The circumstances surrounding the ending of Marvin Stenseth's employment by CAA began in June 1975 when Carolyn Murphy, an enrollee under the CETA program, filed a grievance with the coordinator of the manpower program, Richard Sapp. This grievance asserted that Ms. Murphy had earlier gone to Mr. Stenseth to complain that she was being required to pay kickbacks and "hush" money to her two immediate supervisors to obtain favorable ratings.

On June 12, 1975, the Administration Committee of the Board of CAA held a hearing with respect to the Murphy grievance. Stenseth had been sent a letter requesting that he appear as a witness. It is clear that Stenseth was in no way charged with any offense at this time and was not the subject of the grievance hearing. He was to appear only as the administrator over the grievant and the two accused supervisors.

When Stenseth as a witness was asked about the Murphy allegations, and particularly the fact that she had made complaint to him a month or so earlier, the record reveals that he was hostile and uncooperative. He refused to discuss matters involving falsified personnel reports, signatures, or kickback money. The staff of the CAA told the committee that Stenseth had been having trouble with his paperwork. Evidence in the record reveals that members of the committee felt that Stenseth displayed a complete lack of competence for the job he held. He was warned by an attorney member of the committee at the hearing that he as an administrator and counselor was expected to give a full and candid account of what had transpired, and that the committee at this point was having substantial doubts about his competence in his position.

At the next regular Board of Directors meeting on June 17, 1975, the attorney member of the Administration Committee reported to the Board that Stenseth had been uncooperative "to the point of being insubordinate." Further, he stated that Stenseth's lack of response to the allegation that the timesheets were falsified and his failure to take any action when the Murphy allegations were first made to him indicated a lack of competence justifying discharge. The decision of the Board was unanimous to discharge Stenseth. Stenseth was not notified of this meeting and did not participate in it. He later was notified of the action and of the fact that he could appeal the discharge by way of a hearing before the CAA Board of Directors.

Stenseth asked for a hearing, and it was quickly set for July 15, 1975. At his request the hearing was then delayed. The hearing which was requested by Stenseth's appeal ultimately was held on September 23 by the Executive Committee of the Board of Directors of CAA. The procedures for the hearing, although informal, had been carefully written in advance and communicated to Stenseth through his chosen counsel, Mr. Alfred Jackson. It is the conduct of this hearing which is considered in more detail later in this opinion. At the result of this hearing, the Board action returned Mr. Stenseth to his earlier position of counselor, taking away his administrative duties, or in the alternative giving him a voluntary resignation. He was also given ninety days probation, but the date of the hearing was such that the ninety days probation had already expired by the time of the decision.

### The Merits

Stenseth did not accept the reinstatement to the position of counselor, and he was and is carried on the records of the agency as having terminated his employment voluntarily. Instead, Stenseth brought this suit in United States District Court under 42 U.S.C. § 1983, claiming his civil rights had been violated in his termination and in the procedures involved in his termination. He also complained to the Equal Employment Opportunity Commission asserting racial discrimination because he was a Caucasian, but the EEOC found no reasonable cause to believe that a violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq., had occurred. He also filed a claim with the Department of Labor under the Comprehensive Employment and Training Act. Finally, plaintiff also appealed his grievance to the Greater Fort Worth Manpower Consortium. An investigation was made which was favorable to Stenseth in finding procedural violations. It was introduced in evidence only to show that it had been made and not for the truth of what it said. The Consortium took no action. The Department of Labor first upheld the favorable result to Stenseth but then reversed itself.

The § 1983 lawsuit was finally brought to trial in the district court without a jury in June 1981. The court found the plaintiff's claims frivolous and assessed costs and attorney's fees against plaintiff. Plaintiff, as widow and executrix of the estate of Marvin Stenseth, appeals and asserts five violations of her husband's rights:

1. The due process requirements of the Fourteenth Amendment were violated in the procedures of the pre-termination hearing on June 12, 1975, at which Stenseth appeared as a witness but which led to his discharge.

2. The due process requirements of the Fourteenth Amendment were violated in the post-termination hearing held on September 23, 1975.

3. The failure of the CAA, and its officials, to follow the procedures set forth in the Employment Policy Manual violated the due process clause of the Fourteenth Amendment of the Constitution.

4. The City of Fort Worth and the Consortium failed to follow the grievance procedures as established by those governmental entities in violation of the Fourteenth Amendment to the Constitution.

5. The district court erred in assessing attorney's fees against the plaintiff on the ground that plaintiff's suit was frivolous.

It is clear that all of plaintiff's complaints, with the exception of the complaint concerning attorney's fees, are centered upon the fairness of the procedures with which this personnel matter was handled. Marvin Stenseth originally was discharged as the result of his appearance and performance at a committee hearing at which he was appearing solely as a witness. His recalcitrant attitude during the hearing, however, led to a warning that his own job was in jeopardy if he did not cooperate with the committee. He obviously had the opportunity to respond to this warning during the hearing. These facts raise questions concerning adequacy of the pre-termination procedures prior to his discharge.

■ If the Constitution requires that a governmental employee must be given notification of charges and the right to respond before the formal action of discharge takes place, cf. *Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir. 1974), then Stenseth's constitutional rights might have been violated because of the informality of the pre-termination warning when he had been called only as a witness. Yet the warning and the opportunity to reply were there, and this might have been adequate to meet the constitutional requirement. It is not necessary, however, to determine this issue because we can assume that the original action was inadequate procedurally. Upon appeal, at a de novo hearing, it was reversed and corrected. *Blair v. Robstown Indep. Sch. Dist.*, 556 F.2d 1331 (5th Cir. 1977).

The leading case on the requisite procedures for the dismissal of governmental employees is *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). That case upholds suspensions without pay under procedures calling for pre-termination notice and opportunity to answer so long as adequate hearing is given after termination. Those cases which hold that a full post-termination hearing cannot cure the failure to provide for a minimum of pre-termination notice and opportunity to reply are cases in which prejudice may result or is shown to have resulted. Thus, in *Thurston*

*v. Dekle, supra* at 1273, we said: "Risk reducing procedures must be accorded," when we were evaluating the validity of established personnel disciplinary procedures in a declaratory judgment proceeding. In *Goldberg v. Kelly*, 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970), the Supreme Court found that some form of informal pre-termination hearing was necessary before welfare benefits could be cut off because the very basic necessities of life of those on welfare were threatened by a termination.

If plaintiff could show the assumed failure to provide adequate pre-termination procedures caused prejudice by way of a threat to the property interests in the employment, which the district court conceded he had, then a serious question would be raised as to the discharge action taken. But this record is devoid of any showing of prejudice here. This is not a class action, and so it is not a broadside attack upon discharge procedures as are most of the cases considering such procedures. The case is narrowed to the issue of whether this particular plaintiff's deceased husband was deprived of constitutional rights in the procedures applied in his case. If he had not himself caused the postponement of the full hearing given he would have lost no pay even temporarily, cf., *Arnett v. Kennedy, supra*, 416 U.S. at 169, 94 S.Ct. at 1651 (concurring opinion). Nor was there any showing of damage to his reputation or standing in the community, cf. *Bd. of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548 (1972). It follows that as to the claims of constitutional violation in the pre-termination situation, he stands in no better position concerning his rights having been violated than does anyone who successfully reverses the unfavorable decision of a court or administrative agency on appeal absent a showing of uneradicable prejudice, and there is none shown here. The evaluation of whether Stenseth's rights have been violated must be made, then, upon the basis of the final and binding decision, not an earlier decision which did him no appreciable damage and which was reversed.

The critical inquiry, then, is the constitutionality of the procedures of the hearing of September 23, 1975, in which Stenseth was reinstated as a counselor, but without his administrative duties, and in the alternative he was given a voluntary resignation if he elected not to be reinstated. The claim is a procedural one under the Constitution. The issue is whether the procedures under which this personnel action was taken meet constitutional requirements. The district court found that it was so completely clear that Stenseth had been afforded procedures which met constitutional muster that the suit was frivolous and that the defendants should be awarded their attorney's fees.

At the critical hearing on September 23, Stenseth was represented by chosen counsel, Alfred Jackson. Jackson had been informed orally of the charges against Stenseth before the hearing. They were three in number:

1. he had not kept proper records;
2. he had not taken any investigative action when employee Murphy had complained of having been required to pay kickbacks to her supervisors to obtain favorable ratings; and
3. he had been uncooperative in the investigation of the matter of kickbacks as a witness at the hearing on June 17, 1975.

In addition, Stenseth had been notified by letter specifically that he had been discharged for "incompetence", which obviously constituted a summary of these more specific charges.

At the hearing Stenseth authorized his attorney to request either that he be reinstated, or that he be given a job as counselor without administrative duties, or that he be allowed to resign rather than be discharged.

The case against Stenseth as to his inadequacies as an administrator was strong and clear. Stenseth himself apologized for not cooperating at the earlier hearing. He admitted that he had been criticized over and over again for inadequate record keeping. He also admitted that he had received the reports from Murphy concerning the kickbacks sometime before the hearing and had done nothing about them. Stenseth's attorney put on over a score of witnesses in his behalf at the hearing. To his complaint that Murphy was not called as a witness by the CAA Executive Committee, the record reveals that he and his attorney intended themselves to call Murphy as a witness but that "Murphy did not show up".

At the conclusion of the hearing, which lasted several hours, the decision was made to reinstate Stenseth as a counselor but without administrative duties, admittedly a demotion, and under a ninety day probation. However, it was explained that the ninety day probation period had already expired because it referred back to the date at which he had originally been relieved of his duties and ninety days had expired from that time until the decision. The decision also was that if he did not wish to return to a position as counselor, his termination would be carried as voluntary. Since he did not return, his termination has been carried as a voluntary resignation.

In the district court trial Stenseth's attorney, Jackson, testified that he felt that the hearing had been fair, and there had been a full hearing with no surprises. Jackson also testified that he thought he had won for his client. The procedures under which the hearing was held were informal. They were drawn up, however, by an attorney with experience in such matters and were agreed to by both parties. The witnesses were under oath, although the so-called "legal rules" of evidence were not enforced.

It can only be concluded that the hearing was thorough, complete, and gave every opportunity to Stenseth to present his case. It should also be noted that at no time was Stenseth charged with any kind of dishonesty or affirmatively improper conduct. He was charged only with a lack of competence as an administrator. The record is clear that this employee was given a hearing which without question met constitutional requirements of due process and fairness.

■ The only remaining matter is the claim, formulated in two separate assertions, that in the procedures which have been described above, the precise procedures for grievances set out in the CAA manual were not followed. It was on this basis that an investigation made by a member of the personnel office of the Consortium concluded that Stenseth had not been treated fairly. The dispute actually is whether the procedures were disciplinary or evaluational. The CAA asserted they were disciplinary and the district court agreed. We find no clear error in this decision. But in any event it is not necessary to evaluate in detail the extent of the departure from the procedures contained in manuals of the CAA. The charge by the plaintiff is a constitutional one. The issue is fair procedures, not whether particular procedures were meticulously followed. The procedures were agreed to by the plaintiff and were fair and complete. This disposes of the constitutional claim since no prejudice has been shown.

### Attorney's Fees

■ The district court rendered judgment in favor of the various defendants and against plaintiff and awarded a total of $16,682.65 in attorney's fees on the ground that plaintiff's action was frivolous. The court supported its judgment with a carefully reasoned opinion. Upon the basis of our evaluation of the entire record, however, we are led to conclude that the finding of the district court that plaintiff's claim was frivolous at the time of the trial is based upon hindsight at the conclusion of the trial and not upon the plausible claims which existed at the time the trial began. We, therefore, conclude that the awarding of the attorney's fees was an abuse of discretion, and we find it necessary to reverse this portion of the judgment of the trial court.

Our starting point must be the leading case of *Christianburg Garment Co. v. Equal Employment Opportunity Commission*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1968). It is clear from this and other similar cases that courts are reluctant to award attorney's fees against plaintiffs undertaking to enforce their constitutional rights. So it was that in *Christianburg* the Court said that there would be an allowance of attorney's fees in favor of a prevailing defendant only when the plaintiff's claim was "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so. And, needless to say, if a plaintiff is found to have brought or continued such a claim in *bad faith*, there will be an even stronger basis for charging him with the attorney's fees incurred by the defense." (emphasis in original) *Id.* at 422, 98 S.Ct. at 700. There was no finding of bad faith by the district court so that possible ground can be omitted from consideration.

There are three critical aspects of the development of this case which must be evaluated in determining whether the case had become frivolous at the time plaintiff went to trial.

First, the district court relied upon the fact that a very thorough and complete post-termination hearing had been afforded the plaintiff's deceased husband. As indicated above, we are in agreement with this conclusion. It overlooks, however, the genuine question involving the extent to which Stenseth was entitled to pre-termination notice and opportunity to reply and the further consideration that there are holdings that in some circumstances failure to supply the adequate pre-termination procedures cannot be cured by a thorough and complete post-termination procedure.

As we indicate above, the pre-termination procedures may or may not have been adequate, but we then go on to rest our decision on the fact that the possible failure to grant adequate pre-termination procedures in this case was not shown to be prejudicial. The adequacy of pre-termination procedures and the possible prejudice from the lack of them were genuine issues that the plaintiff had the right to pursue upon a trial. We must conclude, therefore, that the decision of the trial court that the challenge to these procedures was frivolous at

the time of the trial cannot stand against the right of the plaintiff to have full evaluation of her claims concerning the pre-termination procedures.

The second critical point is the claim by plaintiff that the CAA did not follow its own personnel procedural manual in its procedures. As mentioned above, the dispute here is based upon whether the procedures were part of a personnel evaluation process under chapter 4 of the personnel manual or were a disciplinary procedure under chapter 9. The district court recognized that this was at least an arguable issue. In finding the case frivolous as to this issue, it relied solely upon the fact that the personnel manual "is not federal law" for purposes of 42 U.S.C. § 1983. In other words, the court held that although administrative procedures might have been violated, such a violation did not achieve the level of a constitutional violation. Conceding that all the district court said with respect to this issue is true, the fact still remains that it can hardly be frivolous to assert that the failure of an administrative body to follow its established procedures may also involve a procedural due process violation under the Constitution. *Cf. Arnett v. Kennedy, supra*, stating that federal civil service laws " . . . did not create an expectancy of job retention in those employees requiring procedural protection under the Due Process Clause *beyond that afforded here by the statute and related agency regulations.*" 416 U.S. at 166, 94 S.Ct. at 1650 (emphasis added).

Finally, plaintiff claims that CAA Regulations afforded her the right to appeal to the Consortium of cities through which CAA granted the funds, and obligated the Consortium to take corrective action. The district court conceded that plaintiff had reasonable grounds to initiate and pursue her claim against the Consortium. On this claim a report favorable to the plaintiff was made by the Director of the Fort Worth Equal Employment Opportunity office. When the Consortium did not act, plaintiff then filed a complaint with the Department of Labor and obtained what appeared to be at the time an authoritative ruling uphold-

ing her claim. In mid-1980, however, the Department of Labor vacated its prior ruling and determined that plaintiff's deceased husband had no rights under the regulation in question. The district court concluded, "although the fallacies of the EEO report and the initial Labor Department ruling were glaringly obvious at trial, plaintiff could be excused for nursing false hopes until the 1980 redetermination cleared the air. It was from that point on that plaintiff had no reasonable expectation of prevailing at trial."

We must find that this conclusion by the district court was flawed by the advantage of hindsight. Assuming that the original recommendation of the Director of the Fort Worth EEO office and the original decision of the Department of Labor were clearly wrong, we had the situation of a plaintiff who had won two out of three times on this issue. Having lost the last time around, it could hardly be concluded that continuing to pursue the same issue in court was frivolous. It is true that the regulations actually applied only to CETA trainees and were not even applicable to the 1975–76 program from which Mr. Stenseth was terminated. Yet even though these facts resulted in the Department of Labor reversing itself, it cannot be characterized as frivolous for plaintiff to rely upon the slender reed that the regulations actually applied more broadly than they seemed, in terms, to apply. Such peculiarities in government regulations have been known.

We find, therefore, that there were three sets of circumstances involved in the plaintiff's claim at the time the matter went to trial each of which carried at least some measure of possible justification for going to trial. As such, the claim was not frivolous.

### Conclusion

With respect to the merits, we affirm the district court completely in its finding that plaintiff did not establish a valid claim under 42 U.S.C. § 1983 against any of the defendants. On the award of attorney's

fees against the plaintiff, we must reverse. It was an abuse of discretion for the district court to conclude that plaintiff in carrying the suit to trial was pursuing a frivolous claim.

AFFIRMED on the merits, REVERSED on the award of attorney's fees to defendants.