Jack WHITE, Plaintiff-Appellant,

v.

SOUTH PARK INDEPENDENT
SCHOOL DISTRICT, et al.,
Defendants-Appellees.

No. 82–2069
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 20, 1982.

Larry Watts, Houston, Tex., for plaintiff-appellant.

Tanner T. Hunt, Jr., Beaumont, Tex., for defendants-appellees.

Before GEE, RANDALL and TATE, Circuit Judges.

RANDALL, Circuit Judge:

Appellant, Jack White, brought this civil rights action under 42 U.S.C. §§ 1983, 1988 (1976 & Supp. IV 1980), alleging racial discrimination and violations of his first amendment and due process rights. The district court entered a final judgment in favor of the defendants on the basis of the findings of fact and conclusions of law of the Texas Education Commission and awarded attorneys' fees in the amount of $2500 to the defendants. White then filed this appeal. For the reasons set forth below, we affirm the judgment except for the portion awarding attorneys' fees to the defendants, which we reverse.

## I. FACTS AND PROCEDURAL BACKGROUND.

White was employed as a coach and teacher by the South Park Independent School District for over six years under three two-year contracts before his termination. After he received a less-than-satisfactory evaluation by the athletic director, John Adams, in the spring of 1977, he was offered and accepted, under protest, a one-year contract. In November 1977, after a meeting with Adams in the office of the principal, Joe Bryant, concerning White's complaints about poor equipment, White broke down and cried and allegedly threatened to kill athletic director Adams. About three weeks later, he had a minor confrontation with his assistant coach, Soileau, during a basketball game. This led to a meeting on November 28, 1977, among Bryant, Soileau, Adams and White. After Adams left, White again allegedly threatened to kill Adams. A few minutes later, Bryant and assistant principal Clifford Ozan, who had originally hired White, left the office and walked out to the school parking lot where they encountered White. White again allegedly threatened to kill Adams, Soileau and another teacher, Durley.

The superintendent sent White written notice of charges against him and a recommendation of termination. White requested and obtained a hearing before the school board. After one request for a continuance by White's attorney had been granted, the board held a hearing in December at which neither White nor his attorney appeared. On the morning of the hearing, White's attorney had informed the board that he could not attend because he had to appear in federal court. The board accepted the recommendation of the superintendent.

White appealed the board's decision to the State Commission of Education. A second hearing was held before a hearing officer, who rendered a written recommendation which included findings of fact. The Commission denied the appeal on the basis of the hearing officer's recommendation.

Almost two years later, White filed this suit in federal district court against various school officials, alleging racial discrimination, first amendment violations and due process violations. The parties submitted the case to the district court on the record of the Commission and other stipulated evidence. The district court entered final judgment, adopting the findings of fact and conclusions of law of the Commission without elaboration, and awarded attorneys' fees in the amount of $2500 to the school defendants because it found that "the suit was frivolous and without merit, and was brought solely to harass and embarrass the Defendants." Record at 102. White appealed.

## II. DUE PROCESS.

White claims that the school board violated his due process rights: (1) by its failure to grant him a hearing when it renewed his contract for one year rather than the usual two, and (2) by its refusal to grant him a second continuance of his termination hearing and its decision to hold the hearing in his and his lawyer's absence. We hold that the district court was correct in adopting the State Education Commission's conclusion that neither action violated White's due process rights.[1]

---

1. The parties specifically submitted this case to the district court on the basis of the record

established before the Commission. In *Stapp*

White was entitled to a hearing on the failure to renew his contract for two years under the due process clause of the fourteenth amendment only if he had a protected property interest in the renewal of the two-year contract. *Bishop v. Wood,* 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Perry v. Sinderman,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972).[2] The question whether White had a property interest must be determined with reference to state law. *Bishop, supra,* 426 U.S. at 344, 96 S.Ct. at 2077; *White v. Mississippi State Oil & Gas Board,* 650 F.2d 540 (5th Cir.1981). In Texas, an independent school district may adopt the continuing contract provisions of the Texas Education Code, Tex. Educ.Code Ann. §§ 13.101 *et seq.* (Vernon 1972), thereby creating the possibility of tenure for its employees, or it may offer fixed term contracts pursuant to Tex.Educ. Code Ann. § 23.28 (Vernon 1972 & Supp. 1982). The decision concerning which system to adopt is within the individual school district's discretion. *Carl v. South San Antonio Independent School District,* 561 S.W.2d 560, 563 (Tex.Civ.App.—Waco 1978, writ ref'd n.r.e.). Further, the mere fact that a teacher has been previously rehired is not evidence that there is an implied contract to renew the employment agreement every year. *Bowen v. Calallen Independent School District,* 603 S.W.2d 229 (Tex.Civ. App.—Corpus Christi 1980, writ ref'd n.r.e.), *Hix v. Tuloso-Midway Independent School District,* 489 S.W.2d 706, 710 (Tex.Civ.App. —Corpus Christi 1973, writ ref'd n.r.e.).

The record supports the Commission's finding that the South Park Independent School District had not adopted the continuing contract provisions of the Texas Education Code, *supra,* and White has made no showing that he had de facto tenure. The previous contracts, on their face, dealt only with fixed terms of employment and conditions for dismissal during the time that the teacher was under contract with the district. No mention was made of any promise of renewal. Similarly, the written policies and regulations of the Board establish a procedure for the dismissal of an employee, but say nothing about the decision to renew a teacher's contract. Since White has not demonstrated that he had any property interest in the renewal of his contract, the school board was not required to grant him a hearing before offering him a contract for one year rather than two.

The board does not challenge White's entitlement to due process concerning the decision to terminate him before his contract had expired, but argues instead that the procedure afforded White complied with the requirements of the Constitution. White contends that the board's refusal to grant him a second continuance of his termination hearing and the board's decision to hold the meeting in his absence deprived him of his right to procedural due process.

We conclude, on the basis of the record before us, that the procedures followed by the school board in terminating White complied with the minimum requirements of due process as set forth in *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970). The board provided White with written notice of the charges against him sufficiently

*v. Avoyelles Parish School Board,* 545 F.2d 527, 534 (5th Cir.1977), we said, in examining the question whether a school principal's due process rights had been violated in connection with his discharge, that:

> Ordinarily the District Court is not expected to conduct a de novo hearing. Rather, the first inquiry is to *examine the record* of a school board's hearing to ascertain whether the *procedures* followed violated federal rights. In other words, did School Board conduct a hearing for Principal adequate by the procedural due process requirements of the Fourteenth Amendment? If so, then the

record should be viewed to determine whether substantial evidence before the agency supports its action.

(emphasis in original) (citations omitted).

2. In his discussion of the attorneys' fees, White suggests that there was also a violation of his liberty interest. He has not pursued this suggestion nor has he produced any evidence of a violation of his interest in liberty. *See Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

in advance of the hearing to enable him to prepare his defense. White and his attorney were offered an opportunity to examine the evidence, to present evidence and to cross-examine witnesses at a hearing before the board. White has made no showing that the board was not an adequate tribunal.

■ White's complaints about the failure to grant him a continuance and the decision to hold the meeting without him relate essentially to whether the board offered White an opportunity to present his defense *at a reasonable time.* 430 F.2d at 856. We cannot say that the board's actions were unreasonable under the circumstances of this case. The letter sent to White, rescheduling the hearing after he had requested his first continuance, stated that no other extension of time would be granted.[3] The board was still paying White his salary during this time even though he was suspended from classes and coaching. It had a legitimate interest in seeing an end to the delays in the proceedings. The board was not even informed of the need for a continuance until the morning of the hearing.[4]

Even if the hearing before the board did not provide White an adequate opportunity to be heard in his defense, he was afforded a full de novo hearing and review by the Texas Education Commission, which affirmed the board's decision. Under these circumstances, we must agree with the district court that there was no violation of White's right to procedural due process.

## III. THE ALLEGED VIOLATIONS OF SUBSTANTIVE CONSTITUTIONAL RIGHTS.

■ White contends that the board's decision to "demote" him by offering him a one-year contract as well as the decision to terminate him were improperly motivated by racial bias and by his exercise of his first amendment rights.[5] He claims that his criticism of the athletic program at the school, specifically his request for new basketballs and warm-up suits and his disagreement with an unsatisfactory evaluation, were substantial motivating factors in his termination. *See Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).

■ The Commission's recommendation adopted by the district court[6] made no spe-

---

**3.** The letter stated: "[T]here will be no other extension of time. The hearing on termination will be held on that date whether you or your lawyer elect to be present or absent." Record at 65.

**4.** The board decided at the hearing to hold its proceedings in closed session when White did not appear at the hearing to request that the proceedings be open. White had asked for an open session in his original request for a hearing. While we have not held that an open hearing on a teacher's dismissal is required by the Constitution, the due process clause does require an agency to follow its own established procedures. *Ferguson, supra.* The Texas courts have held that even though the board may not discuss a teacher's dismissal in closed session over the teacher's objection under the Texas Open Meetings Act, Tex.Rev.Civ.Stat. Ann. art. 6252–17 (Supp.1982), the teacher's objection must be made at the proper time, i.e. in response to a motion to close made *at the meeting. Bowen,* 603 S.W.2d at 236. Since White was not present at the meeting to object to the closed session, the board's decision was not in violation of its own procedure.

**5.** White's first amendment claim concerning his demotion is "not defeated by the fact that he did not have tenure." *Mt. Healthy Board of Education v. Doyle,* 429 U.S. 274, 283, 97 S.Ct. 568, 574, 50 L.Ed.2d 471 (1977).

**6.** In *Stapp, supra,* we discussed the considerations involved in whether a district court must hold an evidentiary hearing on a first amendment claim:

> In reviewing School Board's record, the reasons given for Principal's discharge may prove to be clearly insubstantial, substantial *and* sufficient, or substantial but insufficient. If the reasons are substantial and sufficient, the District Court need not consider or receive evidence on the First Amendment claim. If clearly insubstantial, the District Court must consider and receive evidence on the First Amendment claim. Likewise, the Court must hear evidence on the First Amendment allegation for substantial but insufficient reasons.

545 F.2d at 534 (citations omitted). Since we agree with the district court that the board's proffered reasons for its discharge were substantial and sufficient, there was no need to conduct a de novo hearing in this case.

cific finding as to whether the board's decisions were motivated by White's exercise of protected activity.[7] It concluded only that

    1. [The board] in the exercise of its discretion may determine that threatening to kill another person is reprehensible conduct, and a violation of the policies of the ... school district.

    2. [The board] did not abuse its discretion in terminating the contract of petitioner.

    3. The constitutional rights of petitioner have not been violated.

Record at 83. The hearing officer's review of the evidence, however, contains a lengthy discussion of the various allegations. The officer specifically found (1) that White had had a confrontation with his assistant during a basketball game, (2) that White threatened to kill the athletic director on two occasions, and (3) that the threats were serious enough "that those around him believed him dangerous." Record at 82–83.

■ The hearing officer's conclusion that the board did not abuse its discretion in discharging White, following as it does directly after the conclusion that threatening to kill someone was a violation of the school policies, can only be interpreted as an implied finding that the board's decision was motivated by the death threats rather than by White's exercise of protected activity.[8] Indeed, the examiner did not make any finding that White's complaints about the athletic equipment and evaluation were at all factors in the board's decision. There-

fore, it would seem that White did not even satisfy his burden of proving that his exercise of protected activity was a substantial factor in the board's decision to terminate him.

Our review of the record indicates that the Commission's conclusion that there was no violation of White's first amendment rights is not in error. *See Hillis v. Stephen F. Austin State University,* 665 F.2d 547, 552 (5th Cir.), *cert. denied,* —— U.S. ——, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982) (holding that appellate review in a first amendment case of a lower court's finding concerning the motivation behind a decision to terminate a faculty member is governed by the clearly erroneous standard). White offered no evidence that he had criticized the athletic director, John Adams, before his contract dispute in the spring of 1977. The dispute with the athletic director over equipment occurred months later, in November, 1977. He had contested the unsatisfactory evaluation, however, and alleged that he was told by superintendent Taylor that the superintendent did not "like people who keep things going regarding evaluations." Plaintiff's exhibit 22. Taylor did not remember making such a statement, Transcript III at 82, and explained that a number of coaches had been given one-year contracts instead of two-year contracts. Transcript III at 84. Further, the 1976–77 evaluation was not the first evaluation somewhat critical of White's performance. His failure to control his temper, rather than his critique of the evaluation, could

---

**7.** The board suggests that White's vigorous support of the athletic programs and dispute over his evaluation do not rise to the level of protected speech under the first amendment. A teacher's speech is not necessarily unprotected simply because it concerns internal operating procedures rather than issues of public importance. *Brown v. Bullard Indep. School Dist.,* 640 F.2d 651 (5th Cir.), *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981). We need not decide whether White's speech was protected, however, since we agree with the district court and the Commission that the board's decision was not in violation of the standards enunciated in *Mount Healthy, infra.*

**8.** White does not claim that credible threats to kill another teacher would be protected speech under the first amendment. *Cf. Chaplinsky v. New Hampshire,* 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942) (fighting words not protected speech); *Garza v. Rodriguez,* 559 F.2d 259, 260–61 (5th Cir.1977), *cert. denied,* 439 U.S. 877, 99 S.Ct. 215, 58 L.Ed.2d 191 (1978) (fighting words not protected speech); *but cf. Watts v. United States,* 394 U.S. 705, 706–07, 89 S.Ct. 1399, 1400–01, 22 L.Ed.2d 664 (1969) (per curiam) (holding that "with the commands of the First Amendment clearly in mind," a comment that "the first man I want to get in my sights is L.B.J." was political hyperbole which did not constitute a willful threat against the president).

well have been the reason for the board's decision to offer him a shortened contract.[9] Therefore, White has not demonstrated that his exercise of protected speech was a substantial motivating factor in his "demotion."

The Commission's conclusion, adopted by the district court, that White's termination did not violate his constitutional rights is also supported by the record. Under *Mt. Healthy,* even if we assume that the exercise of protected first amendment activity played a substantial part in the decision to terminate an employee, the termination is not unconstitutional if the employee would have been terminated anyway. The Constitution requires only that an employee be placed in no worse a position than if he had not engaged in the conduct. 429 U.S. at 285–87, 97 S.Ct. at 575–76.

The board claims that its decision to terminate White was based on (1) the incident involving the assistant coach at a basketball game, and (2) White's repeated threats to kill the athletic director. A number of school administrators testified that White had made the threats and that he was serious about carrying them out. There were also allegations of a violent incident involving a female student. We must agree with the district court's implied conclusion that this evidence demonstrated that White would have been dismissed regardless of his complaints.

Finally, White has not presented any evidence to support his allegation that his termination was racially motivated. In order to prevail on a racial claim, a plaintiff must demonstrate that non-minority members were treated differently than minority members. *See Baldwin v. Birmingham Board of Education,* 648 F.2d 950, 955 (5th Cir.1981). White would have had to demonstrate that white persons threatened to kill fellow teachers and were treated differently than he was. No such show-

ing has been made. Similarly, the superintendent testified that a number of coaches were given one-year contracts rather than two, Transcript IV at 149, and White made no showing that these decisions depended on the race of the coaches. Further, White's replacement as head basketball coach was black. Accordingly, the district court's conclusion that there was no violation of White's constitutional rights is affirmed.

## IV. ATTORNEYS' FEES.

The district court awarded attorneys' fees pursuant to 42 U.S.C. § 1988 in the amount of $2500 plus interest to the defendants, stating that it was "of the opinion that the suit was frivolous and without merit." While section 1988 provides that "the court, in its discretion, may allow the prevailing party ... a reasonable attorneys' fee ...," the standard for awarding attorneys' fees differs if a defendant rather than a plaintiff prevails. In *Christianburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 417, 98 S.Ct. 694, 698, 54 L.Ed.2d 648 (1978), the Supreme Court noted that under the attorneys' fees provision of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–5(k) (1976), attorneys' fees should be awarded to a prevailing *plaintiff* in all but special circumstances. The Court held, however, that a prevailing *defendant* should be awarded attorneys' fees only "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Id.* at 421, 98 S.Ct. at 700.

Noting that the purposes of 42 U.S.C. § 1988 are similar to those of the attorneys' fees provision in Title VII, we have extended the *Christianburg* standard to actions under section 1988. *Lopez v. Aransas County Independent School District,* 570 F.2d 541 (5th Cir.1978). Thus, a district court may award attorneys' fees to a prevailing defendant under section 1988

---

9. A teacher's failure to cooperate with staff and his general abrasiveness are legitimate reasons

for dismissal. *Hillis, supra.*

only if it specifically finds that the plaintiff's suit was "frivolous, unreasonable or without foundation." 570 F.2d at 545.

██ Here, the district court made no findings whatsoever to support its conclusion that the plaintiff's suit was frivolous, leaving us with no basis for an appellate review. *See Anthony v. Marion County General Hospital,* 617 F.2d 1164 (5th Cir. 1980). Similarly, the court determined the amount of the award without any reference to the guidelines established in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). The court's reasons for its award are essential if we are to review the reasonableness of the award. *Brown v. Bullard Independent School District, supra.* Normally, we would remand to the district court for specific findings on whether White's suit was without merit. A remand is not necessary, however, if the record would not support a finding that White's suit was frivolous. *See Stenseth v. Greater Fort Worth & Tarrant County Community Action Agency,* 673 F.2d 842 (5th Cir.1982) (holding suit not frivolous where agency did not follow its own manual); *Crawford v. Western Electric Co.,* 614 F.2d 1300 (5th Cir.1980) (holding Title VII claim against Western Electric not frivolous as a matter of law); *Little v. Southern Electric Steel Co.,* 595 F.2d 998 (5th Cir.1979) (holding delayed Title VII suit not frivolous where there was no evidence that the plaintiff knew he had been given a right to sue letter). Since we conclude that the record before us would not support a finding that White's action in filing this suit was frivolous, unreasonable, or without foundation, there is no need for a remand for further findings concerning attorneys' fees.

White presented substantial evidence that he was a dedicated and popular teacher. He submitted numerous letters from students urging the board to keep him on the faculty. He had received high evaluations of his teaching before 1977 and had been named coach of the year in 1976. He

was terminated only after he had voiced his complaints about the athletic department and demoted after he had challenged the athletic director's evaluation. While we cannot say that the district court erred in concluding that White's complaints were not the substantial motivating factor behind the board's decision, neither can we say that White's suspicions were without foundation.

Further, the board's explanation for its decision was not beyond question. Superintendent Taylor admitted that the basketball incident by itself would not have been sufficient grounds for dismissal. While a number of administrators testified that White had threatened to kill his superior, the threats allegedly occurred during a meeting which all parties agreed was tape recorded by White; yet the tape does not contain any death threats. Principal Bryant explained this discrepancy, claiming that he turned the tape recorder off after Adams left the room, a claim that White denied.[10]

██ In hindsight, it appears that White was terminated because of an abrasive incident involving the athletic director, a termination not unconstitutional under *Mt. Healthy.* However, a court cannot base its evaluation of the merits of a suit on the knowledge gained from hindsight that the plaintiff lost. *Stenseth, supra.* As the Supreme Court stated in *Christianburg:* "Even when the law or the facts appears questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." 434 U.S. at 422, 98 S.Ct. at 701. White's decision to bring suit for a dismissal based on charges of which he was allegedly unaware before the receipt of the letter recommending termination, a dismissal which occurred after he had complained about delays in getting equipment for his team and about an unsatisfactory evaluation, cannot be said to have been frivolous or without foundation. Accordingly, the district court's award of attorneys' fees is reversed and the case re-

---

**10.** During his testimony before the hearing officer, White stated that he had turned the machine back on after Bryant turned it off. He stated at his deposition, however, that he never operated the machine.

manded with instructions to deny the defendants' request for fees.

Each party shall bear its own costs.

AFFIRMED in part, REVERSED in part, and REMANDED.