Charles VAUGHNER, et al.,
Plaintiffs-Appellees
Cross-Appellants,

v.

F.J. PULITO, Defendant-Appellant
Cross-Appellee,

v.

GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA, the Camden Fire Insurance Association, Potomac Insurance Company of Illinois and Pennsylvania General Insurance Company, Third-Party Defendants-Appellees.

No. 86–3285
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 25, 1986.

Rehearing Denied Jan. 7, 1987.

1. In carrying out this direction, the Clerk will be guided here by our comments in n. 2 of *Stelly II.*

Roy A. Raspanti, New Orleans, La., for F.J. Pulito.

New Orleans Legal Assistance Corp., Stephen H. Burrington, New Orleans, La., for Charles Vaughner, et al.

Laurence E. Larmann, Metairie, La., for General Acc. Ins. Co. of America, et al.

Before CLARK, Chief Judge, GARWOOD and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Defendant and third-party plaintiff F.J. Pulito appeals, complaining that the magistrate erroneously concluded that third-party defendant General Accident Insurance Company (General Accident) did not have a duty to defend him in a discrimination action brought by plaintiffs Charles Vaughner and Rebecca Hollister, and that the magistrate erroneously denied his request for attorney's fees. The plaintiffs also appeal, claiming that the magistrate erroneously concluded that Pulito did not intentionally discriminate against them. Finding Pulito's arguments unpersuasive, we affirm the summary judgment in favor of General Accident and the denial of attorney's fees. We also affirm the finding of no intentional discrimination.

## I.

This civil rights action was brought by Charles Vaughner and Rebecca Hollister against Pulito. Plaintiffs claim that Pulito intentionally violated their civil rights by refusing to rent them an apartment based upon racial animosity. Pulito impled his insurance carrier General Accident to defend him and to indemnify him if liability were established. General Accident objected to its presence in the suit and claimed that it was not obligated to defend or indemnify Pulito under the insurance policy it had issued.

The basic facts are as follows. In April 1985, plaintiffs were looking for a new apartment in the New Orleans area. Hollister is a young white woman and Vaughner is a black male; the two are not married. On April 22, Hollister contacted Pulito after seeing an ad in the *New Orleans Times-Picayune/States-Item* for an available apartment. Pulito was the owner and landlord of the apartment complex. Hollister viewed the apartment that same day and then met with Pulito to negotiate a lease. Pulito and Hollister did not execute a written lease, but Hollister did pay Pulito $908 as a security deposit and advance rent for the remaining part of April and all of May. During their discussions, Hollister told Pulito that she was married to Orville Bradshaw, a white male. Bradshaw was in fact a friend and roommate of Hollister and Vaughner. Hollister did not mention Vaughner at any time during this initial meeting.[1]

Later that day, Mrs. Hollister informed Pulito by telephone that Vaughner would be living in the apartment and that he was a black man. Pulito's response to this information is much in dispute. Mrs. Hollister claims that Pulito stated he did not rent to blacks and that he would not allow Vaughner to permanently reside at the apartment. Pulito claims he never made these statements nor even received the phone call. Vaughner, introducing himself as Bradshaw, soon contacted Pulito and asked for the deposit back. Pulito stated that he thought it was "a good idea that Hollister, Vaughner, and Bradshaw not move into the apartment," and agreed to return the deposit.

The next day Hollister went to Pulito's home to obtain the deposit. Pulito returned only $790 of the $908 deposit, re-

---

1. Hollister was accompanied by her mother, Mrs. Carolyn Hollister, during the first meeting with Pulito. While Mrs. Hollister admitted that she also did not mention Vaughner specifically during this meeting, she testified that she brought up the subject of black tenants in general with Pulito. She concluded that Pulito was prejudiced against black tenants based upon his reaction to the topic.

taining the balance for loss of prospective renters, advertising costs, and mental anguish over the events of the past days. Hollister complained about the retention of part of the deposit but left without obtaining a full refund.

Plaintiffs filed suit against Pulito alleging intentional violations of their civil rights secured by 42 U.S.C. §§ 1981 and 1982; the Fair Housing Act of 1968, 42 U.S.C. § 3604(a), (b), (d); and intentional violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA–R.S. 51:1401 *et seq.* (1985). Plaintiffs asked for compensatory and punitive damages along with declaratory and injunctive relief.

Pulito answered, generally denying the allegations. Pulito also filed a third-party complaint against General Accident, his insurer under an owner/landlord and tenant policy. Pulito claimed that General Accident had a duty to defend and possibly indemnify him for the conduct alleged by the plaintiffs. General Accident's answer denied the third-party complaint. General Accident moved for summary judgment; it claimed in its motion that it had no duty to defend or indemnify Pulito since Vaughner and Hollister alleged he intentionally violated their civil rights, and the policy did not cover intentionally inflicted injuries. Pulito responded to the motion for summary judgment stating that the policy covered his acts and that summary judgment was improper as to the question of his intent.

The case was transferred, pursuant to written consent of the parties, to a federal magistrate for trial. On the morning of trial the magistrate granted General Accident's motion for summary judgment stating that the policy did not obligate General Accident to defend Pulito for his intentional injurious actions or to indemnify him if liability was established. The plaintiffs' action was tried and judgment was rendered for Pulito. The magistrate denied Pulito's request for attorney's fees as the prevailing party under 42 U.S.C. § 1988. Pulito and plaintiffs perfected an appeal to this court.

## II.

### A.

■ Pulito's chief complaint on appeal is that the magistrate erred in granting General Accident summary judgment on its duty to defend him. Any duty on the part of General Accident to defend Pulito grows out of the owner/landlord and tenant policy existing between these parties. The policy provides:

> The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> Coverage A. bodily injury or
>
> Coverage B. property damage
>
> to which this insurance applies, caused by an *occurrence* and arising out of the ownership, maintenance or use of the insured premises and all operations necessary or incidental thereto, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage.... (emphasis in original).

The policy defines occurrence as:

> an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured....

The parties agree that Louisiana law governs whether General Accident had a duty to defend Pulito. We thus examine that law to determine whether General Accident had a duty to defend Pulito in this case.

Under Louisiana law, whether an insurer has a duty to defend its insured when sued is determined by a comparison of the terms of the policy and of the allegations of plaintiff's complaint. *Audubon Coin & Stamp Co. v. Alford Safe & Lock Co.,* 230 So.2d 278, 279 (La.App. 1st Cir.1969). "Or as some courts have expressed it the language of the policy and the allegations of the complaint must be construed together, to determine the insurer's obligation [to defend]." 7C Appleman, *Insurance Law*

*and Practice* § 4683 (Berdal ed. 1979). Louisiana also recognizes that the obligation of an insurer to defend suits brought against its insured is broader than the insured's duty to indemnify, and therefore is the first determination that must be made by a court. *See American Home Assurance Company v. Czarniecki*, 255 La. 251, 230 So.2d 253, 259 (1969); *West Brothers of DeRidder v. Morgan Roofing*, 376 So.2d 345, 348 (La.App. 3d Cir.1979). Only if the allegations in the plaintiff's complaint unambiguously and absolutely exclude coverage is the insurer relieved of the duty to defend its insured. *Michel v. Ryan*, 373 So.2d 985, 988 (La.App. 3d Cir. 1979); *see also Bandy v. Avondale Shipyards, Inc.*, 458 F.2d 900, 902 (5th Cir.1972) (applying Louisiana law).

In determining the duty to defend, the plaintiff's complaint against the insured is examined with the assumption that all the allegations are true. *West Brothers*, 376 So.2d at 348. The plaintiff's allegations are liberally construed in deciding whether they set forth grounds that could possibly bring the claim within the scope of the insurer's duty to defend. *American Home*, 230 So.2d at 259; *see also Albritton v. Fireman's Fund Insurance Co.*, 70 So.2d 111, 113 (La.1953). If upon such an examination there appears to be potential coverage under the policy and liability to the plaintiff, the insurer is obligated to defend, regardless of the ultimate outcome of the case. *West Brothers*, 376 So.2d at 348; *see also Scarborough v. Northern Assurance Co. of America*, 718 F.2d 130, 134–35 (5th Cir.1983) (applying Louisiana law).

With these principles in mind, we determine if the magistrate properly rendered summary judgment in favor of General Ac-

cident. The owner/landlord and tenant policy in this case excludes from its coverage Pulito's intentionally injurious actions which occur while he is administering or maintaining the apartment complex. *See Ashland Oil Inc. v. Miller Oil Purchasing Co.*, 678 F.2d 1293, 1317–18 (5th Cir.1982) (construing identical insurance contract provision pursuant to Louisiana law). Policy coverage, therefore, is activated only if Pulito's potential liability is premised on a cause of action not requiring an intentional act.

■ All of the plaintiffs' alleged causes of action against Pulito, however, rest solely upon intentional conduct.[2] A plaintiff in a section 1981 disparate treatment action must establish that a defendant intentionally discriminated against him or her on the basis of race. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 583 n. 16, 104 S.Ct. 2576, 2590 n. 16, 81 L.Ed.2d 483 (1984). A cause of action based upon section 1982 likewise requires an intentional act of racial discrimination by a defendant. *See Save Our Cemeteries, Inc. v. Archdiocese of New Orleans, Inc.*, 568 F.2d 1074, 1078 (5th Cir.), *cert. denied*, 439 U.S. 836, 99 S.Ct. 120, 58 L.Ed.2d 133 (1978). Finally, a plaintiff's cause of action under section 804 of the Fair Housing Act requires an intentional discriminating act. *See Hanson v. Veterans Administration*, 800 F.2d 1381, 1386 (5th Cir.1986). Therefore, even accepting all of the plaintiffs' allegations as true, they would only establish intentional conduct by Pulito. The policy's coverage thus does not extend to encompass those civil rights causes of action since liability under these theories can only be predicated on intentional discriminatory acts by Pulito.

---

**2.** We cannot consider the plaintiffs' Unfair Trade Practices and Consumer Protection claim since Pulito did not assert this cause of action as a basis for opposing General Accident's motion for summary judgment. If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal. *Frank C. Bailey Enterprises, Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir.1978). We note, however, that even if this cause of action had

been raised in opposition to the summary judgment, summary judgment would have still been proper. A showing of intentional conduct by the defendant is necessary to succeed on this type of claim in Louisiana. *See Crabtree Investments, Inc. v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 577 F.Supp. 1466, 1469 (M.D.La. 1984), *aff'd*, 738 F.2d 434 (5th Cir.1985) (mem.). Thus, taking the plaintiffs' allegation as true, this claim could not fall within the coverage of the policy.

*Cf. Solo Cup Co. v. Federal Insurance Co.*, 619 F.2d 1178, 1186 (7th Cir.1980) (insurance policy, providing coverage for unintentional discrimination, did not cover Title VII disparate treatment cause of action). We therefore conclude that there was no potential coverage under the policy, and the magistrate correctly granted General Accident's motion for summary judgment.

### B.

Pulito also appeals complaining that the magistrate erred in not granting him attorney's fees under 42 U.S.C. § 1988.[3] We are of the opinion that the magistrate properly denied the request for attorney's fees.

■ The primary purpose of the attorney's fees provision in section 1988 is to encourage private enforcement of the civil rights statutes. *See* S.Rep. No. 1011, 94th Cong., 2d Sess. 1–4, *reprinted in* 1976 U.S. Code Cong. & Admin.News 5908–11. While attorney's fees should be awarded to a prevailing plaintiff in all but special circumstances, *see White v. South Park Independent School District*, 693 F.2d 1163, 1169 (5th Cir.1982), a court may award attorney's fees to a prevailing defendant under section 1988 only if it specifically finds that plaintiff's suit was "frivolous, unreasonable or without any foundation." *Lopez v. Arkansas County Independent School District*, 570 F.2d 541, 545 (5th Cir.1978). We have recognized that private enforcement would be substantially diminished if parties who had good faith claims under the civil rights statutes faced the prospect of always having to pay their opponent's fees should they lose. *Id.* at 544–45. To avoid discouraging all but "airtight claims," courts focus on whether a plaintiff's claim is colorable and of arguable merit. *Jones v. Texas Tech University*, 656 F.2d 1137, 1145 (5th Cir.1981). We have recognized that "even when the law or the facts appears questionable or unfavorable

at the outset, a party may have an entirely reasonable ground for bringing suit." *White*, 693 F.2d at 1170. Also, a court's denial of a defendant's request for attorney's fees as the prevailing party under section 1988 is reviewed on an abuse of discretion standard. *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1141 (5th Cir.1983); *see also Sullivan v. School Board of Pinellas County*, 773 F.2d 1182, 1190 (11th Cir.1985).

■ After a review of the entire record in light of the above principles, we are of the opinion that the magistrate did not abuse her discretion in denying Pulito's request for attorney's fees. Plaintiffs' action proceeded to a full trial on the merits despite Pulito's attempts to have the case dismissed and his motion for a directed verdict granted after presentation of the plaintiffs' case-in-chief. Pulito also offered to settle during the pendency of the lawsuit. Furthermore, plaintiffs presented some credible evidence on their claims during the trial. All of these facts tend to establish the colorable merit of the plaintiffs' action. *See E.E.O.C. v. Kimbrough Investment Co.*, 703 F.2d 98, 103 (5th Cir. 1983).

Furthermore, Pulito's argument that attorney's fees should have been granted rests primarily on the fact that he ultimately prevailed. We, however, have consistently held that the ultimate result of a civil rights action cannot be the basis for an award of attorney's fees to the successful defendant. *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1141 (5th Cir.1983); *Stenseth v. Greater Fort Worth & Tarrant County Community Action Agency*, 673 F.2d 842, 849 (5th Cir.1982); *Jones v. Texas Tech University*, 656 F.2d 1137, 1145 (5th Cir. 1981).

Because the plaintiffs asserted non-frivolous, good faith civil rights claims, albeit unsuccessfully, we affirm the denial of Pulito's request for attorney's fees.

---

**3.** Section 1988 states in part:
 In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985 and 1986 ... the court, in its discretion, may al-

low the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

### III.

The plaintiffs appeal, complaining only that the magistrate's findings that Pulito did not intentionally discriminate against them are clearly erroneous. We disagree.

 A finding of intent or no intent in a discrimination suit is a finding of fact. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518, 528 (1985). As such the magistrate's conclusion that Pulito did not intentionally discriminate against the plaintiffs must be measured by the standard of Fed.R.Civ.P. 52(a). Rule 52(a) provides:

> Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

 In addressing the clearly erroneous standard in *City of Bessemer City*, the Supreme Court stated that an appellate court should not reverse a finding on discriminatory intent made by the trier of fact simply because the reviewing court would have found the fact to the contrary.[4] 470 U.S. at 573, 105 S.Ct. at 1511, 84 L.Ed.2d at 528 (1985). Where there are two plausible views of the evidence, the appellate court should not find that the district court's adoption of one view over the other is clearly erroneous, especially when the finding is based largely on the credibility of the witnesses.[5] *Id.* at 573, 105 S.Ct. at 1511, 84 L.Ed.2d at 528. As a general rule, therefore, we should not reverse a finding of non-discriminatory intent unless we believe the finding is so illogical or implausible that a clear mistake has resulted.

 Applying these standards, we are of the opinion that the magistrate's finding of no discriminatory intent on the part of Pulito is not clearly erroneous. Almost all the evidence in this case was from the parties themselves and close relatives or associates. We feel obligated therefore to defer to the magistrate's credibility assessments of the evidence. After reviewing the record we recognize that there are two completely different renditions of the events of this case, both of which are potentially plausible. There is conflicting testimony on both sides, but viewing the evidence as a whole, we do not believe that the magistrate's decision to adopt Pulito's explanation over the plaintiffs' was clearly erroneous. Hence, we find no error in the magistrate's decision to render judgment in favor of Pulito on the plaintiffs' claims.

### IV.

We AFFIRM the summary judgment in favor of General Accident and the denial of attorney's fees for Pulito. We also AFFIRM the judgment in favor of Pulito and against the plaintiffs.

> [W]hen a trial judge's finding is based on his decision to credit the testimony of one or more witnesses, each of whom has told a coherent and facially plausible story, that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.
> *City of Bessemer City*, 470 U.S. at 575, 105 S.Ct. at 1513, 84 L.Ed.2d at 529.

---

**4.** The Court in fact warned:
> In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind their function is not to decide factual issues de novo.

*City of Bessemer City*, 470 U.S. at 573, 105 S.Ct. at 1511, 84 L.Ed.2d at 528.

