# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

_____

No. 98-30729

_____

MARGARET ANN MYERS,

Plaintiff-Appellant,

v.

CITY OF WEST MONROE, ET AL.,

Defendants,

CITY OF WEST MONROE; SHERMAN CALHOUN, Individually and in his Official Capacity
as a Police Officer for West Monroe; JIM WAINWRIGHT; ERNEST MCHENRY,

Defendants-Appellees.

_____

Appeals from the United States District Court
for the Western District of Louisiana

_____

May 11, 2000

Before REYNALDO G. GARZA, HIGGINBOTHAM, and BENAVIDES, Circuit Judges.

REYNALDO G. GARZA, Circuit Judge:

## BACKGROUND

On May 18, 1995, and December 1, 1995, police officers stopped Margaret Ann Myers while she was driving her car. With respect to the May stop, Myers alleged that she was illegally stopped, verbally abused, and that her car was illegally searched. As for the December stop, Myers claimed that she was illegally stopped, her car was illegally searched, and that her drivers license was confiscated and discarded, constituting conversion. Myers sued the City of West Monroe, and three police officers: Sherman Calhoun, Jim Wainwright, and Ernest McHenry, and claimed damages of physical injury, mental anguish, emotional trauma, and other special

damages.

The case proceeded to trial. Myers testified on cross-examination that during the May stop, she consented to a search of her vehicle by Officer Calhoun and was issued a ticket for improper lane usage, which she paid. She put on no evidence that the stop was illegal or that the City of West Monroe was aware of (or failed to correct) any "vicious propensities" or "abuse of authority" by its officers. Thus, the district court granted judgement as a matter of law in favor of Officer Calhoun and the City of West Monroe.

The case against Officers McHenry and Wainwright that related to the December stop went to the jury, which returned a verdict in favor of the officers. According to Officer Wainwright, Myers's car came around a turn towards him into his lane of traffic, requiring him to "slam on [his] brakes" to avoid a collision. He then pulled her over and administered a field sobriety test. Before the test, Myers placed her jacket on the trunk of her car. While the test was underway, Officer McHenry arrived to assist Officer Wainwright. Myers's sister and friend were following in another car and also stopped at the scene. The sister and friend testified that Officer McHenry searched the pockets of Myers's jacket.

At one point, Myers testified that Officer McHenry physically entered her car and searched it, but later stated that she was uncertain if Officer McHenry had actually entered the car. Myers's sister and friend testified that Officer McHenry merely looked inside the car with a flashlight. Officer McHenry testified that he did not recall conducting a search of the car or jacket, but admitted that he recalled little about the incident at all.

Myers also testified that Officer Wainwright took her drivers license and did not return it. Officer Wainwright denied this claim. Myers admitted that she did not see him discard the license,

but an unnamed third party found it and returned it to her a few days after the incident.

With regard to her claims for injuries, Myers testified that she suffered emotional distress, nervousness, anxiety, mental trauma, and nausea and gastrointestinal irritation. However, prior to these traffic stops, she had been seen by a psychotherapist for a number of years and had seen a psychiatrist at age fifteen.

According to Myers's testimony, she had seen a physician and complained of nausea three months prior to the first traffic stop. The physician was unable to determine the cause of Myers' nausea. Meyers also visited a gastroenterologist who was unable to diagnose the cause of her stomach problems. She did not discuss the traffic stops with her physicians.

Myers did testify that she saw her psychotherapist following the December stop because she was upset and because it was interfering with her school work. Her friends testified that she became ill following the December stop. However, Myers also told her psychotherapist that her nausea had been ongoing for about a year prior to November, 1995.

After entry of judgment in favor of all four defendants, the defendants sought sanctions pursuant to Federal Rules of Civil Procedure 11 and 37, as well as attorney fees under 42 U.S.C. § 1988. The district court denied the motion for sanctions but granted the motion for attorney fees.

The district court noted that attorney fees may be awarded to a prevailing defendant in a § 1983 case only if the suit was "frivolous, unreasonable, or without foundation, or that the plaintiff continued to litigate after it clearly became so." The court stated that according to the testimony of Myers's psychotherapist and the deposition testimony of Myers's physicians, Myers's claim for special damages was "without foundation from the onset of litigation."

The court further found that, as demonstrated by a complete lack of evidence, Myers's claims against the City of West Monroe were without foundation, but Myers continued litigation after the lack of foundation became evident. Finally, the court stated that after considering the testimony, Myers's counsel should have known that the constitutional claims against Officers Wainwright and McHenry were without foundation. The district court referred the matter to a magistrate for a determination of the fees.

The magistrate assessed fees just over $32,000, and the district court entered judgment in that amount. Myers does not contest the amount of fees, but asserts that the district court abused its discretion and failed to employ the proper analysis with respect to whether fees should have been assessed.

## ANALYSIS

The question before this Court is whether the district court abused its discretion in awarding attorney fees to the four prevailing defendants regarding § 1983 claims of unreasonable search and seizure. Under 42 U.S.C. § 1988, a district court may award attorney fees to a prevailing party in a § 1983 suit, which this court reviews for an abuse of discretion. *See United States v. Mississippi*, 921 F.2d 604, 609 (5th Cir. 1991); *see also Walker v. City of Bogalusa*, 168 F.3d 237, 239 (5th Cir. 1999). A prevailing defendant is entitled to fees "only when a plaintiff's underlying claim is frivolous, unreasonable, or groundless." *Walker*, 168 F.3d at 239.[1] When

---

[1] This limitation attempts to prevent any chilling effect on the enforcement of civil rights. *See Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986). Furthermore, the award of fees to a prevailing plaintiff is an award against a violator of the law and in favor of the individual chosen by Congress to vindicate an important policy; an award of fees to a prevailing defendant does not prevent those considerations. *See Christiansburg Garmet Co. v. E.E.O.C.*, 434 U.S. 412, 419 (1978); *Hughes v. Rowe*, 449 U.S. 5, 14 (1980). The "stringent standard applicable to defendants is intended to ensure that plaintiffs with uncertain but arguably

considering whether a suit is frivolous, a district court should look to factors such as whether the plaintiff established a *prima facie* case, whether the defendant offered to settle, and whether the court held a full trial.  *See Mississippi*, 921 F.2d at 609.

In *Vaughner v. Pulito*, 804 F.2d 873, 878 (5th Cir. 1986), this Court held that a magistrate did not abuse her discretion in denying fees to a defendant when the case proceeded to a full trial on the merits despite attempt by the defendant to have it dismissed after presentation of the plaintiffs' case-in-chief.  *Id*. at 878.  *Vaughner*, however, does not support the proposition that a defendant's failure to move for dismissal prior to trial indicates that a claim is non-frivolous, as argued by Myers.  In fact, the failure to move for summary judgment pretrial may be an economically wise move when, as here, the defendants expect that the plaintiff's own testimony will superficially create a genuine question of material fact,[2] even if the defendants expect that a jury will not find her credible.  In such a situation, a summary judgment motion is a waste of time and money.  Thus, the lack of any pretrial motions by the defendants should not be seen as conclusively establishing that Myers' claims were not frivolous.

On the other hand, whether a defendant offers to settle a case is of questionable value in determining whether the plaintiff's claims are frivolous.  In this case, it appears that the City of West Monroe defended both itself and the police officers.  The City may have a policy of rarely settling claims in order to discourage lawsuits.  If that is the City's policy, it seems odd to allow

---

meritorious claims are not altogether deterred from initiating litigation by the threat of incurring onerous legal fees should their claims fail."  *Aller v. New York Bd. of Elections*, 586 F.Supp. 603, 605 (S.D.N.Y. 1984).

[2]  For example, if the plaintiff says the police officer searched her jacket without consent and the officer says he did not, there will need to be a jury determination of the witnesses' relative credibility.

that factor to further enable the city to obtain attorney fees from losing plaintiffs.[3]

Regardless, it appears clear that the district court did not abuse its discretion in assessing fees against Myers for her claims against the City of West Monroe and Officer Calhoun. These claims were dismissed before reaching the jury. While that alone is insufficient to support a finding of frivolity, *see Hidden Oaks, Ltd. v. City of Austin*, 138 F.3d 1036, 1053 (5th Cir. 1998), it is clear that these claims were frivolous. Myers offered no evidence at trial that Calhoun violated any of her rights and admitted that Calhoun obtained her consent to search her vehicle. Moreover, she put on no evidence that the stop of her vehicle violated the Fourth Amendment. She offered no evidence implicating the City of West Monroe.[4] Consequently, there is no basis from which to say these claims were not frivolous, yet she persisted in pressing these claims until dismissed by a Rule 50 motion of the defendants. Accordingly, we AFFIRM the award of attorneys fees with respect to Officer Calhoun and the City of West Monroe, as the award was clearly within the district court's discretion.

On the other hand, Myers's claims against Officers McHenry and Wainwright are closer.

---

[3] *Mississippi* allows consideration of whether the defendant offered to settle. *See* 921 F.2d at 609. Assuming that the factor has been transported from the employment law cases, we would then question its strict applicability in § 1983 cases. Whether a municipality offers to settle simply seems less indicative of the weakness of a plaintiff's case than whether a private employer offers to settle. A private employer who is insured and who sees few of these cases may settle to make the problem go away. A municipality may chose not to address the problem in as businesslike a fashion and may be more worried that settlement will simply generate more lawsuits.

[4] In her brief, Myers claims she "could have" testified as to the City of Monroe's "deliberate indifference" to violations of civil rights. Apparently, however, she did not. Myers' counsel claims that he abandoned this line of attack for strategic reasons when the trial court cut him off during his opening statements regarding municipal liability. Myers' counsel abandoned the theory, apparently without preserving an objection to the court's interruptions, and thus must live with the consequences: namely, that there is no record evidence to support Myers lodging a claim against the City of Monroe.

Myers and her sister and friend provided evidence that Officer McHenry searched her jacket without her consent. The jury may have misunderstood the "plain view" instruction, however, and believed that so long as an object was in "plain view" it legally could be searched,[5] or the jury may have simply disbelieved Myers and her sister and friend, and credited the officer's testimony.

Myers also testified that Officer Wainwright took her drivers license and never returned it, implying that he discarded it onto the ground because an unnamed third party returned it to her a few days later. Wainwright denied this allegation and the jury apparently believed him. Such a claim seems trivial, at least insofar as it does not allege any constitutional violation, but it is at least evidence of conversion, which is one theory Myers presented. What is also important is that the trial court allowed Myers's claim against both officers to go to the jury.

Thus, there was evidence that McHenry conducted an illegal search and Wainwright converted her drivers license. The district court allowed a complete trial on these claims and sent them to the jury. Consequently, this Court holds that the district court abused its discretion in finding that these claims were frivolous.

**CONCLUSION**

We AFFIRM the award of attorney fees to the City of West Monroe and Officer Calhoun, finding that the district court did not abuse its discretion in determining that the claims with respect to the May traffic stop were frivolous. We REVERSE the award of attorney fees to

---

[5] One part of the instruction read as follows: "If an article is in plain view, its observation involves no invasion of privacy and there is no search." This Court held that such an instruction was not erroneous. *See Myers v. City of West Monroe,* No. 98-30363 (5th Cir. Aug. 23, 1999) (unpublished). We agree that this instruction was not erroneous; it is possible that the jury may have misunderstood the plain view doctrine in the context of this case, since Myers was not wearing her jacket and the jacket was in "plain view" on the trunk of the car.

officers Wainwright and McHenry, holding that the district court abused its discretion in deciding that Myers's claims regarding the December stop were frivolous.  We REMAND this case to allow the district court to determine the appropriate amount of the new fee award.