# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 12, 2020

Lyle W. Cayce
Clerk

No. 18-51022

NANETTE BLANCHARD-DAIGLE, Representative of the estate of Lyle Blanchard,

> Plaintiff - Appellant

v.

SHANE GEERS; JIM HATFIELD; BELL COUNTY, TEXAS,

> Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 6:18-CV-208

Before BARKSDALE, STEWART, and COSTA, Circuit Judges.

PER CURIAM:*

Nanette Blanchard-Daigle asserted claims under 42 U.S.C. § 1983 against Bell County, Texas, Bell County Sheriff's Deputy Shane Geers, and Texas Ranger Jim Hatfield for violations of Lyle Blanchard's rights under the Fourth Amendment, as incorporated in the Fourteenth Amendment, when he was killed during a traffic stop. The district court dismissed all claims against all defendants and awarded attorney's fees to Bell County and Deputy Geers. For the reasons set forth herein, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 18-51022

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A. Facts

We draw the following facts from the appellant's complaint and the attachment thereto. Nanette Blanchard-Daigle ("Ms. Blanchard-Daigle") is the sister and representative of the estate of the deceased, Mr. Lyle Blanchard ("Mr. Blanchard"), who was a 59-year-old Navy veteran and resident of Harker Heights, Bell County, Texas.  Deputy Geers is a Sheriff's Deputy with 17 years of experience in the Bell County Sheriff's Department.  Ranger Hatfield is a Texas Ranger in the Texas Department of Public Safety.

On the afternoon of August 30, 2016, Deputy Geers observed Mr. Blanchard driving on East Knights Way in Bell County. Per his observation, Deputy Geers suspected Mr. Blanchard of driving while intoxicated and began following him, turning on his patrol siren and emergency lights. Then, Mr. Blanchard signaled and made a right turn onto Rummel Road, a private gravel road toward his home. Mr. Blanchard travelled about 1,000 feet down the road before pulling over.

Upon stopping, Deputy Geers did not turn off his siren nor did he approach Mr. Blanchard's vehicle. Mr. Blanchard did not hear Deputy Geers give him any instructions or commands. Mr. Blanchard then opened his car door and exited the vehicle facing Deputy Geers, who was standing approximately 50 feet away, behind his patrol car door. When Mr. Blanchard reached for something, Deputy Geers shot Mr. Blanchard eight times, four of those bullets being fatal.

After the shooting, Deputy Geers spoke with Ranger Hatfield. Hatfield secured a warrant to search Mr. Blanchard's home to investigate an aggravated assault. Mr. Blanchard had been dead for eight hours by the time the warrant was signed.

2

No. 18-51022

## B. Procedural History

Ms. Blanchard-Daigle initially filed suit in the Western District of Texas, Waco Division, on March 23, 2017. The matter was assigned to District Judge Robert Pitman and then referred to Magistrate Judge Jeffrey C. Manske. Appellees Bell County and Deputy Geers filed a joint motion to dismiss for failure to state a claim. In response, Ms. Blanchard-Daigle filed two amended complaints within eight days of each other. Appellee Ranger Hatfield then separately moved to dismiss Ms. Blanchard-Daigle's second amended complaint. Magistrate Judge Manske issued a report and recommendation recommending the court grant both pending motions to dismiss. About a week later, in August 2017, Ms. Blanchard-Daigle voluntarily dismissed her suit.

Ms. Blanchard-Daigle then re-filed her complaint in the same district court on July 26, 2018, this time with a 23-page attachment—the expert report of Roger Clark. The matter was assigned to Judge Pitman and then referred to Magistrate Judge Manske, as in the first suit. Bell County and Deputy Geers filed their motion to dismiss on August 16, 2018 and Ranger Hatfield filed his own motion to dismiss on August 21, 2018. The matter was re-assigned to Judge Alan D. Albright on September 20, 2018, who then granted Appellees' motions to dismiss for failure to state a claim, with prejudice, on October 29, 2018. Ms. Blanchard-Daigle timely appealed.

## II.     STANDARD OF REVIEW

This Court reviews Rule 12(b)(6) motions to dismiss for failure to state a claim *de novo*, "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff[]." *Littell v. Hous. Indep. Sch. Dist.*, 894 F.3d 616, 622 (5th Cir. 2018). "The test for deciding these motions is what is written in the [complaint]." *Gause v. U.S. Dep't of Def.*, 676 F. App'x 316, 318 (5th Cir. 2017). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations;" rather, it need only allege facts sufficient to

No. 18-51022

"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff pleads facts allowing the court to draw reasonable inferences that point to the defendant's liability for the alleged misconduct. *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015). Appellees in this case argue that plain error applies but, to be sure, "no party has the power to control our standard of review." *United States v. Vonsteen*, 950 F.2d 1086, 1091 (5th Cir. 1992) (en banc); *see also United States v. Davis*, 380 F.3d 821, 827 (5th Cir. 2004) ("[W]e, not the parties, determine our standard of review."). We proceed *de novo*.

## III.    DISCUSSION

Before discussing the merits of the case, we must clarify the scope of our review, especially in light of the restrictive 12(b)(6) standard.[1] Pursuant to Federal Rule of Civil Procedure 10(c), we are considering the expert report of Roger Clark as being part of the complaint. FED. R. CIV. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). In their briefings and at oral argument, all parties urged this court that the appended attachment falls within the scope of Rule 10(c). We agree. In doing so, we are restricted to considering the "nonconclusory, factual portions" of the report. *See Fin. Acquisition Partners LP v. Blackwell*, 440 F.3d 278, 285–86 (5th Cir. 2006) ("Even if *non-opinion* portions of an expert's affidavit constitute an instrument pursuant to Rule 10, opinions cannot substitute for facts . . . .") (emphasis in original).

### A. Municipal Liability

Ms. Blanchard-Daigle argues that her complaint established Bell County's liability under 42 U.S.C. § 1983. We disagree.

---

[1] Like the district court, we decline to judicially notice the publicly available video footage in reaching our conclusion.

No. 18-51022

To find a municipality liable under § 1983, a plaintiff must establish that (1) a policymaker (2) promulgates a policy or custom (3) that is the "moving force" of a violation of constitutional rights. *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 694 (1978). An official policy "usually exists in the form of written policy statements, ordinances, or regulations, but may also arise in the form of a widespread practice that is 'so common and well-settled as to constitute a custom that fairly represents municipal policy.'" *James v. Harris Cty.*, 577 F.3d 612, 617 (5th Cir. 2009) (quoting *Piotrowski v. City of Hous.*, 237 F.3d 567, 579 (5th Cir. 2001)). The policy must be either unconstitutional or "adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Id.* (internal quotation marks omitted).

To base deliberate indifference from a single incident, "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy or failure to train." *Burge v. St. Tammany Par.*, 336 F.3d 363, 373 (5th Cir. 2003). To satisfy "moving force," Ms. Blanchard-Daigle "must show direct causation, i.e., that there was 'a direct causal link' between the policy and the violation." *See James*, 577 F.3d at 617 (quoting *Piotrowski*, 237 F.3d at 580). To be sure, "deliberate indifference" goes beyond mere or gross negligence, for a governmental entity cannot be held liable under § 1983 via *respondeat superior. Id.*; *see also Monell*, 436 U.S. at 691.

As a general matter, even when accepting the allegations against the County as true, the facts alleged in this complaint related to Bell County are so conclusory that it is difficult to assess the County's involvement, if any at all. Ms. Blanchard-Daigle's use of legal conclusions do not satisfy the *Twombly* and *Iqbal* pleading standard. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.

No. 18-51022

Moreover, the face of the complaint does not satisfy the elements of *Monell* liability. In her appellate briefing, Ms. Blanchard-Daigle argues that her complaint satisfies the elements because (1) it names a policymaker—Bell County; (2) it asserts that the County's failure to train Deputy Geers on "how to respond to non-violent offenders" and "in the constitutional rules of the use of deadly force" amounts to an official policy or custom, as required by *Monell*; and (3) the failure to train policy was adopted with deliberate indifference such that it was the moving force behind Deputy Geers shooting and killing Mr. Blanchard. Though such arguments strive to contextualize the complaint to fit these requirements, the face of the complaint falls short.

Ms. Blanchard-Daigle argues that, on the "policymaker" prong, the complaint goes beyond what this court required in *Groden v. City of Dallas*, 826 F.3d 280 (5th Cir. 2016). There, we stated that "the specific identity of the policymaker is a legal question that need not be pled; the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Groden*, 826 F.3d at 284. Indeed, we said that naming the entity that acted under the policy was fundamental. *Id.* at 284 n.4. Accordingly, Ms. Blanchard-Daigle has satisfied this prong since Bell County was named as a policymaker. However, Bell County argues that the complaint fails to establish the second and third prongs of the *Monell* test. We agree.

On the "official policy" prong, Ms. Blanchard-Daigle argues that the county's failure to train Deputy Geers and its subsequent failure to discipline him after the shooting amounted to a ratification and deliberate indifference to his need for more training. We disagree.

Failure to train may represent a policy for which the city may be held liable only if it directly causes injury. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). The fact that an officer could be "unsatisfactorily trained" is not

enough to trigger the municipality's liability. *Id.* at 390–91. The plaintiff must show that (1) the training policy was deficient, (2) the County was deliberately indifferent to this deficiency in adopting the policy, and (3) the deficient training policy was the "moving force" of, *i.e.*, directly caused, the constitutional violation. *Shumpert v. City of Tupelo*, 905 F.3d 310, 317 (5th Cir. 2018).

In this context, to sufficiently demonstrate that there was deliberate indifference, the plaintiff has to show that the municipality had actual or constructive notice of a pattern of similar constitutional violations caused by the policy. *See Connick v. Thompson*, 563 U.S. 51, 61–62 (2011). The complaint alleges that Deputy Geers was reprimanded in August 2014 for "poor participation and unbecoming behavior during a Firearms Electronic Simulator" and that "[t]his prior act shows Geers was unfamiliar with the gravity of using deadly force." Ms. Blanchard-Daigle argues that this one prior incident shows that Deputy Geers had such an unfamiliarity with the constitutional contours of excessive force that it amounts to the County's deliberate indifference to the fact that he needed different or additional training. This argument fails.

In *Rodriguez v. Avita*, we reiterated the Supreme Court's holding in *Oklahoma City v. Tuttle*, which is that "in general . . . a single shooting incident by a police officer [is] insufficient as a matter of law to establish the official policy requisite to municipal liability under § 1983." *Rodriguez v. Avita*, 871 F.2d 552, 554–55 (5th Cir. 1989) (paraphrasing *Okla. City v. Tuttle*, 471 U.S. 808, 821 (1985)). But, the "single-incident" exception to the *Monell* liability test can be sufficient to find a municipality liable when the plaintiff can show that "the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation." *Roberts v. City of Shreveport*, 397

F.3d 287, 295 (5th Cir. 2005). This exception is applied only in extreme circumstances in order to not run afoul of the rule that municipalities cannot be held liable via *respondeat superior*. *Id.*; *see also Pineda v. City of Hous.*, 291 F.3d 325, 334–35 (5th Cir. 2002) ("Charged to administer a regime without *respondeat superior*, we necessarily have been wary of finding municipal liability on the basis of [the single-incident] exception for a failure to train claim.").

Ms. Blanchard-Daigle implicitly argues that the single-incident exception should apply and relies on our decision in *Brown v. Bryan Cty.*, 219 F.3d 450 (5th Cir. 2000), to support that argument. However, the single prior incident involving Deputy Geers during training that Ms. Blanchard-Daigle alludes to is not of the kind contemplated by the "single-incident" liability theory. *See Brown*, 219 F.3d at 460; *see also Roberts*, 397 F.3d at 296 (finding that the single-incident exception did not apply when the police chief "oversaw a significant training regimen" for his subordinate officers and there was no evidence that the officer was "involved in any [prior] cases involving the improper use of deadly force").

In *Brown*, a Bryan County sheriff hired a reserve sheriff's deputy without vetting him through a pre-hiring screening process. *Brown*, 219 F.3d at 454. The reserve deputy was hired having no prior law enforcement experience and without any formal law enforcement training from the County. *Id.* There was also credible evidence showing that he did not participate in the state's law enforcement training program. *Id.* at 455. He had an extensive criminal record which included, *inter alia,* arrests for assault, battery and resisting arrest. *Id.* at 454. At the time of his hire, he was in violation of the terms of his probation and, as a result, there was an outstanding warrant for his arrest. *Id.* at 454–55. In the incident in that case, the reserve deputy used a violent "arm-bar" technique to take down the plaintiff during a traffic stop,

8

which included grabbing her arm, pulling her from her vehicle, spinning her to the ground, and driving his knee into her back upon applying the arm-bar maneuver. *Id.* at 454. There was also credible evidence that he had an excessive number of "takedown arrests" similar in method to how the plaintiff was injured. *Id.* at 455.

When the Supreme Court heard the case, it stated that the single-incident exception was not applicable to the sheriff's hiring decision. *See Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410–11 (1997). Specifically, the Court said that, "predicting the consequence of a single hiring decision, even one based on an inadequate assessment of a record, is far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties." *Id.* at 410. The Supreme Court vacated our judgment and remanded the case for findings consistent with their decision. *Id.* at 416.

On remand, we found that the single-incident exception was sufficient to find Bryan County liable under a failure-to-train theory because the reserve deputy received no law enforcement training once he was hired, had a violent past, and had a history of using excessive force during his time as a police officer. *Brown*, 219 F.3d at 462–65. We concluded that all of those facts taken together directly caused the incident and that the incident was highly predictable. *Id.*

The present case is not similar to what occurred in *Brown v. Bryan Cty*. The complaint stated that Deputy Geers received training from the state and county law enforcement training programs. It also failed to identify any prior excessive force incidents involving Deputy Geers in the field during the course of his 17 years in law enforcement. The complaint only pointed to Deputy Geers' one instance of poor performance during training. To that end, we have never said that an officer's singular poor performance in training provides

sufficient constructive notice to a municipality that it is highly predictable that a constitutional violation would result from it.

Moreover, we determine that Roger Clark's report attached to the complaint significantly undercuts Ms. Blanchard-Daigle's argument asserting Bell County's liability. The expert report attached to the complaint identifies two policies that form the basis of Deputy Geers' training: the Bell County Sheriff's Office Defensive Firearms Program ("BCSD Program") and the Texas Commission on Law Enforcement Education Basic Curriculum ("TCOLE Program"). The report provided specific examples of the deficiencies in the TCOLE program. Specifically, the report states that, "[t]hese deficiencies in training apparently include a lack of realistic scenario training at the TCOLE certified Academy given to Deputy Geers. Specific deficiencies include training designed to create 'muscle memory' responses to high risk incidents [and] meaningful continuing periodic training during their career as line Deputies." But, as to the BCSD program, the report merely states that Deputy Geers' actions were "indicative of the inadequate BCSD published policy and procedure." The report also noted that "no new BCSD policies have been implemented, and no existing BCSD policies have been corrected or clarified since this incident." Beyond these conclusory statements, he fails to identify the inadequacies in BCSD's policies.

Even when construing the complaint and the attachment in the light most favorable to Ms. Blanchard-Daigle, we do not identify any additional facts that marshal the allegations in the complaint into the realm of plausibility as established in *Twombly* and *Iqbal. See Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal

citations omitted); *see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). Accordingly, because the complaint fails to satisfy the second prong of the *Monell* test, we need not analyze the third prong. In sum, the complaint fails to establish Bell County's liability under 42 U.S.C. § 1983. We affirm the district court's dismissal of the claims against Bell County.

## B. Qualified Immunity

When properly applied, qualified immunity protects all officials "but the plainly incompetent or those who knowingly violate the law" and holds "public officials accountable when they exercise power irresponsibly." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). When invoked, the plaintiff must show that (1) a constitutional violation (2) was (a) objectively unreasonable (b) under clearly established law. *McClendon v. City of Columbia*, 305 F.3d 314, 322–23 (5th Cir. 2002) (en banc) ("Ultimately, a state actor is entitled to qualified immunity if his or her conduct was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions."). It is the plaintiff's responsibility to show that the defendant is not entitled to qualified immunity. *See Id.* at 323. At the 12(b)(6) stage, "it is the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" *id.* (emphasis in original) (quoting *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)).

To successfully plead an excessive force claim, the plaintiff must show (1) an injury, (2) that resulted directly from the use of excessive force, and (3) that the use of force was objectively unreasonable. *Freeman v. Gore*, 483 F.3d 404, 416 (5th Cir. 2007). When death results from the use of deadly force, the only issue to decide is if the use of deadly force was objectively unreasonable.

11

*See Carnaby v. City of Hous.*, 636 F.3d 183, 187 (5th Cir. 2011). Objective unreasonableness is evaluated under three factors: (1) whether the suspect posed an immediate threat to the safety of the officers or others; (2) whether the suspect is actively resisting arrest or attempting to flee; and (3) the severity of the crime at issue. *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Ms. Blanchard-Daigle argues that the district court erred procedurally and substantively in finding that Deputy Geers was entitled to qualified immunity. As to procedural error, Ms. Blanchard-Daigle argues that the district court improperly viewed the facts most favorable to Deputy Geers and drew reasonable inferences in his favor rather than following the well-settled 12(b)(6) standard. As to substantive error, she argues that the complaint sufficiently alleges that the use of force was objectively unreasonable because it presented facts that showed that Mr. Blanchard was unarmed; that Deputy Geers knew that Mr. Blanchard was unarmed; that Mr. Blanchard was not fleeing nor attempting to flee; that he was not resisting arrest; and that Deputy Geers "escalated to the use of deadly force without using verbal de-escalation tactics," thus satisfying the factors of objective unreasonableness in *Graham v. Connor*. We disagree.

Deputy Geers is entitled to qualified immunity unless "every reasonable official would have understood that what he [was] doing violate[d]" a constitutional or statutory right. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). The "dispositive question is 'whether the violative nature of [the officer's] *particular* conduct is clearly established.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)) (emphasis in original).

Deputy Geers' decision did not violate clearly established law. "Our circuit has repeatedly held that an officer's use of deadly force is reasonable when an officer reasonably believes that a suspect was attempting to use or

reach for a weapon." *Valderas v. City of Lubbock*, 937 F.3d 384, 390 (5th Cir. 2019); *see also Manis v. Lawson*, 585 F.3d 839, 844 (5th Cir. 2009) (collecting cases). We have found that officers reasonably used deadly force when a suspect reached for his waistband, *see Salazar-Limon v. City of Houston*, 826 F.3d 272, 279–80 (5th Cir. 2016), when a suspect reached under a seat while sitting in a parked car, *see Manis*, 585 F.3d at 844–45, and even when a suspect reached into a nearby boot, *see Ontiveros v. City of Rosenberg*, 564 F.3d 379, 385 (5th Cir. 2009). In light of these precedents, we cannot say that every reasonable officer would have known that it was unconstitutional to use deadly force against a suspect who reached for something—particularly when Mr. Blanchard had driven 1,000 feet down a private road before pulling over and then exiting his vehicle unprompted. Qualified immunity thus defeats Ms. Blanchard-Daigle's claim against Deputy Geers.

## C. Ranger Hatfield's Search Warrant

Ms. Blanchard-Daigle argues that Ranger Hatfield secured the warrant to search Mr. Blanchard's home for aggravated assault "as a pretext for investigation into [Mr.] Blanchard's history" and to "besmirch [Mr. Blanchard] in the community and the media." We need not address this claim because our well-settled precedent holds that the deceased have no rights to be protected or invalidated under the Constitution. *Whitehurst v. Wright*, 592 F.2d 834, 840 (5th Cir. 1979) ("After death, one is no longer a person within our Constitutional and statutory framework, and has no rights of which he may be deprived."). Therefore, we affirm the district court's grant of dismissal as to the claims against Ranger Hatfield.

## D. Attorney's Fees

Attorney's fees awards are reviewed for abuse of discretion on appeal. *Walker v. City of Bogalusa*, 168 F.3d 237, 239 (5th Cir. 1999). "A district court abuses its discretion if its award is 'based on an erroneous view of the law or a

No. 18-51022

clearly erroneous assessment of the evidence.'" *DeLeon v. Abbott*, 687 F. App'x 340, 342 (5th Cir. 2017) (quoting *Walker*, 168 F.3d at 239).

42 U.S.C. § 1988(b) allows for the award of "reasonable attorney's fees" to "the prevailing party" in § 1983 cases. *Fox v. Vice*, 563 U.S. 826, 832–33 (2011). A prevailing defendant may be awarded attorney's fees only when a court finds that "the plaintiff's action was frivolous, unreasonable, or without foundation even though not brought in subjective bad faith." *Hughes v. Rowe*, 449 U.S. 5, 15 (1980) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978)); *see also Walker*, 168 F.3d at 240. "To determine if a claim is frivolous or groundless, courts may examine factors such as: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the court dismissed the case or held a full trial." *Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 425 (5th Cir. 2011) (quoting *Myers v. City of W. Monroe,* 211 F.3d 289, 292 (5th Cir. 2000)). Frivolity determinations are done on a case-by-case basis. *Id.* Additionally, the fact that a claim may be "legally insufficient to require a trial [does] not, for that reason alone, [make the claim] 'groundless' or 'without foundation.'" *Id.* However, this court has generally affirmed attorney's fees awards when the plaintiff's claims lack "a basis in fact or rel[y] on an undisputably meritless legal theory." *Id.*

Ordinarily, to be awarded § 1988(b) attorney's fees, a party would have to prevail on the underlying merits of a claim, not simply on "procedural or evidentiary rulings" such as a motion to dismiss for failure to state a claim. *See Hanrahan v. Hampton*, 446 U.S. 754, 759 (1980) . In *Schwarz v. Folloder*, we said that "a dismissal with prejudice gives the defendant the full relief to which he is legally entitled and is tantamount to a judgment on the merits." *Schwarz v. Folloder*, 767 F.2d 125, 130 (5th Cir. 1985). We are satisfied that the appellees are prevailing parties because the appellant's claims were dismissed with prejudice.

14

No. 18-51022

Having established that the appellees here are prevailing parties, we must then determine if the attorney's fees award was an abuse of discretion. It is axiomatic that we may affirm the district court for any reason supported by the record, even those not relied on by the district court. *See LLEH, Inc. v. Wichita Cty.*, 289 F.3d 358, 364 (5th Cir. 2002). The district court reviewed the complaint and appended expert report, dismissed the pleadings with prejudice, and awarded attorney's fees to the appellees.

The district court found that this case was frivolous because Ms. Blanchard-Daigle had not established a prima facie case, the appellees had not offered to settle, and the case was dismissed with prejudice. However, we have stated before that "[e]ven when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Silsbee Indep. Sch. Dist.*, 440 F. App'x at 425. Nonetheless, despite the grave circumstances giving rise to the case, Ms. Blanchard-Daigle had four total attempts at pleading this case. The magistrate judge's report and recommendation in the first suit was enough to put Ms. Blanchard-Daigle on notice of the complaint's factual deficiencies. The fourth and final attempt was the same factually deficient complaint except with an expert report affixed to it. That attempt still proved unsuccessful because of its lack of factual support in the complaint. Considering the totality of these circumstances, we do not find an abuse of discretion and affirm the district court's award of attorney's fees to Bell County and Deputy Geers.

## CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.