# United States Court of Appeals
# for the Fifth Circuit

———————

No. 23-60451

———————

United States Court of Appeals
Fifth Circuit

**FILED**

September 4, 2024

Lyle W. Cayce
Clerk

Adrian Hoyle,

*Plaintiff—Appellant/Cross-Appellee*,

*versus*

City of Hernando; Scott Worsham, *in his official capacity as Chief of Police of the Hernando Police Department*; Officer Lynn Brown, *Individually and in his official capacity as a Hernando Police Officer*,

*Defendants—Appellees/Cross-Appellants*,

Officer Hunter Solomon,

*Defendant—Appellee*.

———————————————————

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 3:21-CV-171

———————————————————

Before Higginson, Willett, and Oldham, *Circuit Judges*.

Stephen A. Higginson, *Circuit Judge*:*

———————————————

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-60451

This appeal arises from a high-speed chase involving two Hernando Police Officers, Lynn Brown and Hunter Solomon, and one man, Adrian Hoyle, who ran a red light. After Hoyle was restrained on the ground, Officer Brown allowed his police dog to continue biting Hoyle, while Officer Solomon stomped on Hoyle's motionless body. Hoyle filed suit under 42 U.S.C. § 1983 against the City of Hernando, the chief of police of the Hernando Police Department, and Officers Brown and Solomon. The district court granted summary judgment to all defendants, concluding that the *Heck* bar[1] applied and, in the alternative, that Hoyle had failed to demonstrate a constitutional violation. Hoyle filed a motion for reconsideration and all defendants (minus Officer Solomon) filed a motion for attorney's fees. Both were denied. Hoyle appealed and defendants (minus Officer Solomon) cross-appealed. We AFFIRM.

## I.

## A.

On September 3, 2020, Officer Brown, while off-duty, observed a blue Chevrolet Malibu, driven by Hoyle, run a red light at a high rate of speed. Officer Brown activated his emergency lights and attempted to stop the car, continuing his pursuit even after Lieutenant Robert Scott ordered him to stop.[2] Hoyle led Officer Brown and other officers who joined the pursuit on an eight-minute high-speed chase. During the chase, Hoyle drove erratically,

---

[1] *Heck v. Humphrey*, 512 U.S. 477 (1994).

[2] This isn't the first time Officer Brown has ignored a supervisor's order to cease a high-speed pursuit. *See, e.g.*, *White v. City of Hernando*, No. 3:21-CV-162, 2022 WL 4543182, at *1 (N.D. Miss. Sept. 28, 2022) ("[A]lthough Officer Lynn Brown of the Hernando Police Department was not initially involved in the chase, he was aware of the pursuit and was likewise aware of Lieutenant Coleman's decision to terminate it. In fact, the Defendants admit that Officer Brown was aware of the directive to terminate the chase.").

passed several vehicles, drove on the wrong side of the road, and nearly collided with other cars. Hoyle eventually lost control of the car and drove into a ditch, where the Malibu was boxed in by the patrol cars of Officers Brown and Solomon.

Officer Brown's dash-cam footage reveals the following after the chase ended: Two seconds after the Malibu came to a stop, Hoyle exited the car with his hands raised in surrender. Shortly thereafter, Officer Brown set his police dog ("K-9") on Hoyle. The K-9 latched onto Hoyle's leg for approximately one minute, until Officer Brown pulled the K-9 off Hoyle. During the encounter, Officer Brown allowed the K-9 to continue biting Hoyle for roughly 30 seconds *after* Hoyle had already been restrained.[3] While the K-9 had Hoyle's right leg in its jaws, Officer Solomon threw seven close-fisted punches at Hoyle's head, including two while Hoyle was lying on the ground. Hoyle swung back once at Officer Solomon (and missed). Then, once Hoyle was already restrained in handcuffs on the ground, Officer Solomon proceeded to stomp on Hoyle's motionless, supine body.

Hoyle was later taken in a squad car to the hospital for treatment. According to Officer Brown's report, the Officers did not know the Malibu was stolen at the time of the chase and only learned this fact when Hoyle later admitted to stealing the vehicle in Memphis. Hoyle was charged with felony fleeing and possession of stolen property in Mississippi state court. Two charges of assault on a law-enforcement officer were later added.

---

[3] This isn't the first time Officer Brown has deployed a K-9 for an extended period of time. *See, e.g.*, *Cooper v. Brown*, 156 F. Supp. 3d 818, 828 (N.D. Miss.) ("Brown's alleged explanation (contradicted by his own expert) that 'he didn't have to get the dog off until he got the cuffs on' seems quite consistent with his deposition testimony, which appears to depict an officer in no great hurry to terminate the attack by his dog."), *aff'd in part, appeal dismissed in part*, 844 F.3d 517 (5th Cir. 2016).

No. 23-60451

On June 3, 2021, Hoyle entered into a plea agreement in which he pleaded guilty to felony fleeing in exchange for the other charges being remanded.[4] *See* Miss. Code Ann. § 97-9-72(2). In the factual basis articulated by the prosecution in support of Hoyle's plea, Hoyle admitted (with two caveats) to the following:

> (1) that he "operated his motor vehicle in a reckless manner with willful disregard for the safety of persons or property or in a manner manifesting extreme indifference to the value of human life[,]" specifically driving "at a high rate of speed" in an "erratic" manner, "passing vehicles, driving on the wrong side of the road, [and] forcing cars off the roadway nearly hitting other vehicles"; (2) that he "refuse[d] to bring his motor vehicle to a stop after being given a visible or audible signal [b]y Officer Lynn Brown . . . who had reasonable suspicion to believe that [Hoyle] had committed a crime"; (3) that he "well kn[ew] that Officer Lynn Brown was in fact a law enforcement officer acting within the scope of his duty"; (4) that he eventually "lost control, [] ran off the road[,]" and, when "officers tried to box him in[,]" he struck "both officers['] . . . vehicles" before "finally c[oming] to a stop"; and (5) that the "the officers deployed a K-9 to apprehend the suspect fearing [Hoyle] may have a weapon."

Hoyle also admitted, as part of the factual basis, that the K-9 "engage[d] the lower right leg of [Hoyle] as he continued to resist arrest."

When the state court asked Hoyle whether he "ha[d] any disagreements with the factual bases set out by the prosecutor," Hoyle took

---

[4] At oral argument, the parties clarified that when charges are "remanded" under Mississippi law, they are dismissed without prejudice. *See* Oral Arg. at 9:55-10:05, 27:39-27:45; *see also Rew v. Vincent*, 489 F. Supp. 3d 563, 575-76 (S.D. Miss. 2020) (concluding "that a remand to the file does not constitute a 'conviction or sentence' under *Heck*, or an ongoing state criminal proceeding also protected by *Heck*" (citations omitted)).

4

issue with two statements: He responded that "[he] didn't strike the [officer's] vehicle and [he] didn't strike the officer." Seeking clarification, the court asked Hoyle if he agreed with the prosecution's assertion that Hoyle "fle[d] the scene when the officer was trying to arrest [him]," and Hoyle "agree[d] what the prosecutor said about that is accurate."

The court accepted the joint recommendation of the State and Hoyle and sentenced Hoyle to a term of 274 days. The court ordered that counts 2, 3, and 4 would be remanded and Hoyle would be given credit for 274 days served in custody.

**B.**

Hoyle filed his original complaint in July 2021, pursuant to 42 U.S.C. § 1983, asserting federal and state-law claims. He amended his complaint approximately a month later. In his amended complaint, Hoyle asserts federal excessive-force claims under the Fourth and Fourteenth Amendments and state-law claims of negligent hiring, supervision, and retention, as well as negligent and/or intentional infliction of emotional distress.[5] The City of Hernando; Scott Worsham, Chief of Police of the Hernando Police Department; and Officer Brown (collectively, "the Municipal Defendants") and Officer Solomon moved for judgment on the pleadings or, in the alternative, for summary judgment.

In September 2022, Judge Biggers granted defendants' motions for judgment on the pleadings or, alternatively, for summary judgment. The court determined that Hoyle's federal excessive-force claims were *Heck* barred and, alternatively, did not demonstrate a constitutional violation. The court dismissed Hoyle's federal claims with prejudice, and declined to

---

[5] As the district court correctly noted, Hoyle abandoned any federal unlawful-arrest claim.

exercise jurisdiction over his state-law claims, dismissing them without prejudice.

Hoyle filed a Federal Rule of Civil Procedure 59(e) motion for reconsideration, and the Municipal Defendants filed a motion for prevailing-party attorney's fees. While those motions were pending, Judge Biggers retired and the case was reassigned to Judge Mills.

In August 2023, Judge Mills denied both motions. As to Hoyle's motion for reconsideration, the court found that "[Hoyle] has a good faith argument that Judge Biggers' conclusion that [Hoyle's] prevailing in this lawsuit would 'necessarily imply' the invalidity of his criminal conviction runs afoul of" Fifth Circuit precedent, but declined to grant the motion. Concerning its denial of the Municipal Defendants' motion for attorney's fees, the court reasoned that the *Heck* issues are "rather close ones," and that Hoyle's allegations of excessive force are not "frivolous."

Hoyle appealed and the Municipal Defendants cross-appealed in a timely manner.

## II.

We have appellate jurisdiction under 28 U.S.C. § 1291 over the denial of Hoyle's motion for reconsideration and the Municipal Defendants' motion for attorney's fees. We review a denial of a Rule 59(e) motion for abuse of discretion. *Wise v. Wilkie*, 955 F.3d 430, 434 (5th Cir. 2020). To the extent the ruling was a reconsideration of a question of law, it is reviewed de novo. *Id.* "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (internal quotation marks and citation omitted).

No. 23-60451

## III.

First, we consider the district court's denial of Hoyle's motion for reconsideration. The underlying dismissal of Hoyle's federal excessive-force claim rested on two grounds: First, the district court concluded Hoyle's federal excessive-force claim was *Heck* barred. Second, the district court held that "[n]otwithstanding the *Heck* bar, . . . it is not constitutionally excessive to release a canine to effectuate an arrest," so there was "no viable excessive force claim."

On appeal, Hoyle urges that the *Heck* bar is inapplicable because his excessive-force claim and his felony-fleeing conviction are "temporally and conceptually distinct." *Poole v. City of Shreveport*, 13 F.4th 420, 426-27 (5th Cir. 2021) (quoting *Bush v. Strain*, 513 F.3d 492, 498 (5th Cir. 2008)).

But Hoyle's counsel inexplicably waived any challenge to the district court's second, independent basis for its decision—i.e., its alternative holding on the merits that Hoyle failed to demonstrate a constitutional violation. In his opening brief, Hoyle asserts that "[t]he sole issue before this [c]ourt is whether the *Heck* doctrine . . . precluded, as a matter of law, the federal excessive force claims made by Hoyle." By circumscribing his appeal to the *Heck*-bar issue and failing to dispute the district court's alternative holding, Hoyle's counsel waived any challenge to the court's alternative decision on the merits.[6] *See Smith v. Sch. Bd. of Concordia Par.*, 88 F.4th 588, 594-96 (5th Cir. 2023).

So, notwithstanding the possible merit of Hoyle's *Heck*-bar argument, we affirm the district court's order denying Hoyle's motion for

---

[6] We note that the motion for reconsideration filed below by Hoyle's counsel *also* abandoned any challenge to the district court's no-constitutional-violation holding.

reconsideration because Hoyle's counsel abandoned any challenge to the district court's no-constitutional-violation holding.

## IV.

Next, we consider the district court's denial of the Municipal Defendants' motion for attorney's fees. We review that decision for abuse of discretion. *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009).

"In any action or proceeding to enforce a provision of [42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b). But attorney's fees are "presumptively unavailable" for prevailing defendants. *Dean v. Riser*, 240 F.3d 505, 508 (5th Cir. 2001). Prevailing defendants "cannot recover § 1988 fees without demonstrating that the plaintiff's underlying claim was frivolous, unreasonable or groundless." *Merced*, 577 F.3d at 595 (citation omitted). "When considering whether a suit is frivolous, a district court should look to factors such as whether the plaintiff established a *prima facie* case, whether the defendant offered to settle, and whether the court held a full trial." *Myers v. City of W. Monroe*, 211 F.3d 289, 292 (5th Cir. 2002).

It's true that the Municipal Defendants did not make a settlement offer and the district court did not hold a trial.[7] However, as is evident from the district court's order, "the *Heck* issues in this case are rather close ones." And given the severity not only of Officer Solomon's actions, but also those of Officer Brown, it's possible that Hoyle could have prevailed in defeating, at minimum, Officer Brown's qualified-immunity defense had his counsel not waived any such challenge. Accordingly, the Municipal Defendants have

---

[7] It's also true that the district court's order denying the Municipal Defendants' motion for attorney's fees focused, in part, on the wrong defendant (Officer Solomon).

No. 23-60451

not met their burden to establish that Hoyle's "underlying claim was frivolous, unreasonable or groundless," *Merced*, 577 F.3d at 595 (citation omitted), and the district court did not abuse its discretion in denying prevailing-party attorney's fees to the Municipal Defendants.

## V.

Because Hoyle's counsel waived any challenge to the district court's no-constitutional-violation holding and the Municipal Defendants are not entitled to § 1988 fees, we AFFIRM the district court's order.

No. 23-60451

Andrew S. Oldham, *Circuit Judge*, joined by Willett, *Circuit Judge*, concurring:

I join the court's opinion because it faithfully applies our precedent. I write separately, however, to highlight an oddity of our fee-shifting cases.

American courts generally cannot shift attorney fees[*] without express authorization in a statute or contract. The Supreme Court has termed this the "American Rule." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). It exists in contradistinction to the English Rule, under which the losing party must pay both his fees and his opponent's. *See id.* at 247 n.18 ("As early as 1278, the courts of England were authorized to award counsel fees to successful plaintiffs in litigation. Similarly, since 1607 English courts have been empowered to award counsel fees to defendants in all actions where such awards might be made to plaintiffs.").

Section 1988 is perhaps the most well-known fee-shifting statute in America. It provides: "In any action or proceeding to enforce [*inter alia*, 42 U.S.C. § 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee . . ." 42 U.S.C. § 1988(b). That provision does much to explain why § 1983 litigation is so popular in our courts. But its plain text does *nothing* to differentiate between prevailing plaintiffs and prevailing defendants. It simply says "the prevailing *party*" may reap the benefit of fee shifting. *Ibid.* (emphasis added). And that appears to mirror the English Rule, which has provided prevailing-party fee

---

[*] "There are at least eleven competing terms we could use instead of 'attorney fees.'" *Gahagan v. United States Citizenship & Immigr. Servs.*, 911 F.3d 298, 300 n.1 (5th Cir. 2018); *see also ibid.* (citing *Haymond v. Lundy*, 205 F. Supp. 2d 403, 406 n.2 (E.D. Pa. 2002), for variations on the phrase).

shifting to both plaintiffs and defendants since the reign of James I. *See Alyeska*, 421 U.S. at 247 n.18.

Oddly, however, American courts have interpreted the phrase "prevailing party" to mean "most plaintiffs, even when they do not really prevail," and "virtually no defendants ever." For example, if a plaintiff prevails on one of 15 claims and recovers just 5% of the $2 million in damages she sought, she can *still* claim prevailing-party status and get a fee award twice the size of her damages. *See Mancini v. Northampton Cnty.*, 836 F.3d 308, 320 (3d Cir. 2016). A plaintiff who recovers $1 in nominal damages from the State is entitled to more than 79,000 times that amount in attorney fees. *See Arce v. Louisiana*, No. 16-14003, 2019 WL 2359204, at *15 (E.D. La. June 4, 2019). And the policy preference for paying plaintiffs' fees is so strong that it overrides even a contingency-fee contract that purports to cap fee awards to plaintiffs' attorneys. *Blanchard v. Bergeron*, 489 U.S. 87, 89 (1989). Contrariwise, as the majority opinion points out, a prevailing *defendant* cannot enjoy fee shifting unless the plaintiff's claim was "frivolous." *Merced v. Kasson*, 577 F.3d 578, 595 (5th Cir. 2009); *see ante*, at 8–9.

What's worse, the federal courts have also held that certain disfavored *plaintiffs* cannot recover prevailing-party fees. For example, Shelby County, Alabama sued as a civil-rights plaintiff to challenge the coverage formula in Section 5 of the Voting Rights Act of 1965. It won a landmark victory that declared Section 5 unconstitutional. *See Shelby Cnty. v. Holder*, 570 U.S. 529 (2013). But when Shelby County sought prevailing-party fees, the district court and the D.C. Circuit denied them. *See Shelby Cnty. v. Lynch*, 799 F.3d 1173, 1175 (D.C. Cir. 2015). Why? Because even though civil-rights plaintiffs are generally entitled to prevailing-party fees for much less significant victories, Shelby County was not the type of plaintiff the federal courts preferred. *See also Whitford v. Gill*, 402 F. Supp. 3d 529, 534 (W.D. Wis. 2019) (denying Wisconsin Election Commission's motion for fees, even after

it prevailed in the Supreme Court and successfully dismissed plaintiffs' claims as nonjusticiable).

All of this seems to be predicated on the idea that prevailing-party fee-shifting statutes are supposed to incentivize certain kinds of preferred litigation by certain preferred litigants. But the statutory text says none of that. And federal courts are supposed to leave policy-preference choices to Congress—not invoke them to rewrite statutes. If "[t]ext is the alpha and the omega of the interpretive process," *United States v. Maturino*, 887 F.3d 716, 723 (5th Cir. 2018), and if we are committed to taking the text seriously in § 1983 litigation, *see* Tyler B. Lindley, *Anachronistic Readings of Section 1983*, 74 ALA. L. REV. 897 (2024), we should eventually revisit our atextual approach to § 1988.